**SMITH v. MISSOURI, K. & T. R. CO.**

No. 9177—Opinion Filed Dec. 3, 1918.

On Rehearing Nov. 18, 1919.

(Syllabus by the Court.)

**1. Witnesses—Cross-Examination—Scope.**

An attorney has no right to cross-examine a witness, except as to facts and circumstances connected with the matter stated in his direct examination. If he wishes to examine him on other matters, he must do so by making the witness his own, and calling him as such in the subsequent progress of the case.

**2. Appeal and Error—Prejudicial Error—Improper Cross-Examination.**

From an examination of the entire record in the instant case we are of the opinion that the improper cross-examination of the plaintiff's witnesses did probably result in a miscarriage of justice, and was sufficient grounds for awarding a venire facias de novo.

On Rehearing.

**3. Damages—Personal Injuries—Aggravation by Unskillful Treatment.**

Where a party has used reasonable care in selecting a physician or surgeon, but owing to unskillful treatment the injury has been increased, the party causing the original injury will be held liable in damages for the latter; and the issue is not whether the physician or surgeon was, in fact, a man of high skill, but whether he bore such reputation as would justify the plaintiff in calling for his services under the obligation to exercise good faith in the choice of his physician.

Error from District Court, Oklahoma County; Edward Dewes Oldfield, Judge.

Action by W. L. Smith against the Missouri, Kansas & Texas Railway Company. Judgment for defendant, and plaintiff bring error. Reversed and remanded, with directions.

Asp, Snyder, Owen & Lybrand, for plaintiff in error.

Clifford L. Jackson, W. R. Allen, and M. D. Green, for defendant in error.

Opinion by GALBRAITH, C. This is an appeal by the plaintiff in error, who was plaintiff below, from the judgment of the trial court, rendered in favor of the defendant in error, who was defendant below, upon the verdict of the jury in an action for personal injuries. The plaintiff at the time of the injury complained of was 51 years of age, and was engaged in selling insurance and in buying cotton seed, and was earning $150 per month, and lived at the city of Sulphur, Okla. The petition alleges the cause of action as follows:

"That on February 3, 1915, the plaintiff, Smith, went to the passenger depot of defendant company at Cleveland, Oklahoma, and purchased a ticket from Cleveland to Tulsa; that while he was waiting at said station for the passenger train due at 3 o'clock in the afternoon, and was, in law, a passenger of said company, his attention was attracted by a freight train switching and coupling cars on the side track at said station at Cleveland and immediately opposite the platform and depot; that said freight train and engine thereon were making excessive amount of noise by the ringing of bells, bumping of cars, escaping and expulsion of steam, and in other ways, so that he was unable to and did not hear the passenger train coming into the said station; that the passenger train without warning was, by the employes of the defendant company, run into the station at a rapid rate of speed and ran against another person standing on the platform, and hurled him against the plaintiff, knocking plaintiff against the engine of said passenger train and to the station platform, dislocating the right arm of the plaintiff, causing his head to strike against the platform, and thereby permanently injuring the plaintiff, rendering his right arm useless, and destroying the hearing of one ear; that the employes of the defendant company in charge of the

engine pulling the passenger train could for a distance of 300 feet or more see the plaintiff and such other person standing upon said platform, and knew or could have known of the dangerous position in which plaintiff was placed, but that said employes negligently failed to give the plaintiff any warning by ringing the bell or blowing the whistle or otherwise, and negligently failed to take any measures to stop or slack the speed of the train, or otherwise avoid the injury to plaintiff, all as was their duty to do, after seeing and knowing of the plaintiff's peril; and that said employes of the defendant company could have, by the exercise of reasonable care and diligence, avoided the injury of the plaintiff."

The answer of the railway company was a general denial and a plea of negligence on the part of the plaintiff contributing to his injury, and the answer of the receivers of the company was of a similar nature. Upon the issues thus formed the case was submitted to the jury and a verdict returned for the defendant.

There are numerous assignments of error set out in the petition in error and supported by argument and voluminous citations of authorities in the brief, but as we view this case it is only necessary to consider two of these assignments, namely, the sixth, which reads:

"Said court erred in permitting the defendant over the objection and exception of the plaintiff, to extend the cross-examination of plaintiff's witnesses beyond the scope covered in their direct examination",

—and the ninth, which reads:

"Said court erred in the abuse of his discretion by which the plaintiff was prevented from having a fair trial."

The record discloses that immediately after the accident the plaintiff was conveyed to a hotel at Cleveland and a physician called, and his injured arm was treated and bandaged, and on the advice of this physician he returned to his home at Sulphur the following day; that there he called his family physician and a few days later a surgeon at Sulphur was called in and these doctors treated the injury for something like a year; when a cure was not affected at the end of this time, another physician of a different school of medicine was called, and on his advice the plaintiff was sent to Oklahoma City, where an X-ray of his arm was taken, which disclosed a broken bone and a dislocated joint; that on the advice of the physician who had directed him to go to Oklahoma City he employed two or three specialists to treat the arm, who subsequently performed several operations thereon. When these specialists were called at the trial to testify in behalf of the plaintiff as to the character of his injury and the probable duration thereof, the defendant, on cross-examination of these witnesses over the objection of the plaintiff, was permitted to attempt to show that the treatment that the plaintiff received from the doctors first called by him was not the proper treatment, and this character of cross-examination was carried to such an extent as to introduce a collateral issue in the case, one not raised by the pleadings, and the issue on trial, namely the liability of the railway company for the plaintiff's injuries, was lost sight of, and the trial permitted to develop into a trial of the doctors. By reason of this irregular conduct of the trial the real issue before the court and jury was so obscured that the collateral issue was the one really tried by the jury, and upon which the verdict was returned for the railway company. Excerpts from the examination of Dr. Cunningham, one of the witnesses called by the plaintiff, will disclose the character of the cross-examination complained of:

"Q. Doctor, as a surgeon and a practicing physician, have you been called—if you had been called upon to treat the plaintiff at the time he had a dislocation of the radius and a compound fracture of the ulna, would you have attempted to reduce the fracture of the ulna without reducing the dislocation of the radius?

"By Mr. Asp: Objected to as improper, incompetent, and immaterial; not proper cross-examination.

"By the Court: Overruled.

"By Mr. Asp: Exceptions.

"A. What I did in this case would answer the question as near as I could answer it.

"Q. You took the position in this case that anything you did on the ulna would be wasted until the dislocation of the radius was reduced? A. I don't know what I thought. I just went ahead and did what I did because I thought that was good treatment.

"Q. If the physician who treated this case originally attempted to reduce the fracture and ignored the position of the radius, would you say that was good practice?

"By Mr. Asp: Objected to as incompetent, immaterial, and irrelevant; not proper cross-examination.

"By the Court: Overruled.

"By Mr. Asp: Exceptions.

"A. I don't know what he had to deal with when he treated it.

"Q. Now, Doctor, if this plaintiff suffered a broken ulna, and this part was really dislocated, and the physician reached the plaintiff within an hour or an hour and a half

after the injury, could he have detected from an external examination that the radius was dislocated? (Same objection; same overruling; exceptions.) A. I don't want to say what another man could find out.

"Q. What could you find out had you been in his place? A. I found the condition as I showed it to you.

"Q. This condition would have been much more easily discovered immediately after the injury than when you discovered it, would it not? A. I don't know. Sometimes they swell up very quickly and get pretty large. May not have been so large, and may not have been so easy to discover it, and then again it might have been very easily discovered.

"Q. Then ordinarily, Doctor, what would you say. A. Just what I said.

"Q. What did you say? A. I tell you that the condition that I found, and saw in this plaintiff, is what I would do.

"Q. You reduced this radius and established the length of the arm and the strength of the arm itself before you attempted to deal with the ulna, didn't you? A. I did them both together.

"Q. Did you perform both operations at the same time? A. Yes.

"Q. What did you do first? A. I made both incisions, one right after the other; at the elbow and the other just as fast as I could make them.

"Q. As a matter of fact, if these were out of joint here, and the ends of these bones were lying— A. Well, right there was about the position the man was carrying his arm.

"Q. Then this could not be put back in its original position until the broken bones or this arm was placed in its original position, could it? A. I could not do it, or did not do it.

"Q. Do you think you could have performed, or could have determined immediately after this accident, whether or not there was a dislocation of the elbow? A. I have made mistakes. I don't know what I could have done.

"Q. If you had not have determined it, would you have said there was a mistake? A. I don't know what the conditions were at the time he was seen by anybody but myself.

"Q. If the arm was paining considerably, and was slightly swollen, what would you say then? (Same objection; same overruling; exceptions.) A. I would have to agree with the patient that it was painful and swollen.

"Q. You would have no idea what to do? A. I would try to find out if he employed me.

"Q. If you were called in on a case an hour and a half after an accident, and in that particular case there was a dislocated elbow and a broken bone, you would find it, wouldn't you, Doctor? (Same objection; same overruling; exceptions.) A. I would hunt for it to the best of my ability.

"Q. Doctor, in this case, with the injury to the ulna and the radius as you discovered it at the time you say you did, I will ask you whether or not, if you had been called in to treat that case an hour, or an hour and a half, or even two hours, after the accident, whether or not you would have overlooked, after diagnosing the case, whether or not you would have overlooked this dislocated elbow? A. I don't know. I would have exhausted all the equipment and means at my hands at the time to find out.

"Q. How much time would it have taken, do you suppose, for you to have done that? A. It depends altogether on where I was.

"Q. If you were in a town of 2,000, in a hotel, where you were practicing medicine regularly, say in the town of Cleveland, Oklahoma, how much time would you have given to that after turning it loose? A. I would have satisfied myself what the conditions were, or until I could get the patient to where he could be satisfied by somebody.

"Q. Do you say that would be good treatment in this particular case to have bandaged this arm and done the entire work within 30 minutes, put it in splints, and sent the patient way, and leave it in the condition you found it? (Same objection; same overruling; exceptions.) A. I did not do that.

"Q. You don't find that good treatment; is that what you mean? (Same objection; same overruling; exceptions.) A. My answer would amount that I did not wrap it up in 30 minutes' time and turn him away. That is the way I answered the question.

"Q. Is it always possible to ascertain a dislocated elbow from an external examination? A. Not always.

"Q. Would it be in this case, the kind of a dislocation you had? (Same objection; same overruling; exceptions.)"

This character of cross-examination was allowed over the objections of the plaintiff to extend to great length, and the same character of cross-examination was permitted of the X-ray and the bone specialist called by the plaintiff as witnesses in his behalf. This character of cross-examination was not permissible for two reasons; (1) Because it was irrelevant, and tended to support an issue not raised by the pleadings and not submitted to the jury for determination. (2) Because it extended beyond the direct examination of the witnesses.

It is no answer to this assignment to say that this line of cross-examination was permissible to determine the competency of the

expert witnesses, and to test their knowledge and skill, and that its tendency was merely to reduce the amount of the plaintiff's recovery, and since the plaintiff did not recover anything by the verdict of the jury, the error, if any, was harmless. In the first place, these physicians were not called as expert witnesses. They were called for the purpose of proving the character and extent of the injury sustained by the plaintiff, and their direct examination was confined to this point. To permit the cross-examination to extend beyond the matters brought out on direct examination tended to introduce in the case collateral issues and issues not raised by the pleadings. It had a direct tendency to confuse the minds of the jury, and to obscure the issues submitted for trial, namely, the liability of the railway company for the injury of the plaintiff, and to direct their attention from the issue submitted to the collateral one as to whether or not the plaintiff had competent physicians and whether or not they had exercised proper skill in treating him. No one can say with certainty what influence the introduction of this collateral issue had upon the verdict of the jury, but it is clear that it was improper cross-examination, and not permissible under the settled rules of evidence, and that is sufficient to condemn it.

In Philadelphia & Trenton Railroad Co. v. Stimpson. 39 U. S. (14 Pet.) 448. 10 L. Ed. 535, the Supreme Court of the United States announced the rule as follows:

"A party has no right to cross-examine any witness, except as to facts and circumstances connected with the matters stated in his direct examination; if he wishes to examine him on other matters, he must do so, by making the witness his own, and calling him as such, in the subsequent progress of the cause."

See, also, Woods et al. v. Faurot, 14 Okla. 171, 77 Pac. 346; Chicago, R. I. & P. R. Co. v. Beatty, 34 Okla. 321, 118 Pac. 367, 126 Pac. 736, 42 L. R. A. (N. S.) 984; Harrold v. Territory of Oklahoma, 169 Fed. 47, 94 C. C. A. 415, 17 Ann. Cas. 868.

It may be conceded that the plaintiff was not well served by the physicians first called to attend him, and those who treated him for the first year following the accident, inasmuch as he was suffering from a broken bone in the arm and a dislocated joint and these physicians did not discover the extent of his injuries. However, the plaintiff was not at fault on this account. All of these doctors were regularly licensed physicians and surgeons, and his good faith in calling them is not questioned.

Permitting this character of cross-examination was a clear violation of the statutory right given to the plaintiff, namely, the right to have his case tried according to the settled rules of evidence. It is true the rule is well established that the cross-examination of witnesses is largely within the discretion of the trial judge. However, the rule is equally well established that this discretion is subject to review by the appellate court.

While there was a sharp conflict in the evidence. the testimony of the plaintiff below tended to show primary negligence on the part of the railroad company by its failure to give the usual signals on approaching the station, as sounding the whistle and ringing the bell, and by running into the station at an unusual rate of speed, and from an examination of the entire record we are convinced that the verdict would probably have been for the plaintiff, but for the collateral issue injected into the case by the improper cross-examination of the witnesses complained of, and that it was an abuse of discretion on the part of the trial court to allow this character of cross-examination, and that by reason thereof the judgment appealed from should be reversed, and the cause remanded, with directions to award a venire facias de novo.

By the Court. It is so ordered.

On Rehearing.

PER CURIAM. It is urged in support of the petition for rehearing that the improper cross-examination was not prejudicial error because the effect of the evidence elicited by such examination was to reduce the damages rather than disprove primary negligence, and inasmuch as the verdict was for defendant, the jury must have concluded there was no primary negligence.

The court properly instructed the jury to the effect that it was incumbent on the plaintiff to make use of reasonable means to effect as speedy and complete a recovery as could reasonably be accomplished, and for that purpose the plaintiff was required to use reasonable care in the selection of competent and skillful surgeons and physicians; and that if he failed in this respect he could not recover damages for an aggravation of his injury, or result therefrom, occasioned by such failure. Plaintiff offered proof to the effect that the three doctors he called bore the reputation in that community as being skillful and competent physicians and surgeons. This evidence was objected to by the railroad company and the objection sustained. The rule appears to be well settled that where a party has used reasonable care in selecting a physician or surgeon, but owing to unskillful treatment the injury has been increased, the

party causing the original injury will be held liable in damages for the latter. 8 R. C. L. p. 449; 13 Cyc. 77; 17 C. J. 779. In the case of Lyons v. Erie R. R. Co., 57 N. Y. 489, it was said:

"One who is injured by the negligence of another is bound to use ordinary care to effect his cure and restoration; but he is not responsible for a mistake, and when he acts in good faith and under the advice of a competent physician even if it is erroneous, the error will not shield the wrongdoer."

It was competent for plaintiff to show that he acted in good faith and used due care by employing well known and reputable physicians to treat his injury. Baker v. Borello, 136 Cal. 160, 68 Pac. 591. It was error to exclude this evidence and the improper cross-examination served to aggravate the error by presenting to the jury an issue not within the pleading—that is, the competency of the physicians called by plaintiff rather than his good faith in calling them. In view of the evidence in this case we are constrained to the opinion this issue had the effect of excluding the issue of negligence.

The petition for rehearing is denied.