**ARKANSAS LOUISIANA GAS COMPANY, a corporation, Appellant,**

v.

**Clark BASS and First Life Assurance Company, Appellees.**

No. 60200.

Court of Appeals of Oklahoma, Division No. 4.

Jan. 2, 1985.

Rehearing Denied Jan. 30, 1985.

Released for Publication by Order of Court of Appeals April 25, 1985.

James M. May, McAlester, for appellant.

George Zellmer, Allford, Ashmore, Ivester, Brown & Zellmer, McAlester, for appellees.

BRIGHTMIRE, Presiding Judge.

This is an action by a natural gas company to condemn some of Clark Bass's land for a pipeline right-of-way. The commissioners reported the damages to be $9,968. A jury decided, however, that the defendants' damage was $16,100. The gas company, Arkansas Louisiana Gas Company, appeals. We affirm.

## I

ARKLA sued to acquire a right-of-way fifty feet in width and embracing 6.23 acres in order to install a 4½ inch natural gas pipeline across defendants' 644-acre tract. On August 25, 1981, the court-appointed commissioners fixed the amount of compensation at $9,968. The landowner timely filed an objection to the taking and alternatively demanded a jury trial to determine the amount of damages.

The compensation issue was tried on April 18, 1983, and the jury returned a verdict for $16,100. Judgment was rendered on the verdict, and in addition to the $9,968 on deposit with the clerk, the trial judge ordered plaintiff to pay defendant $6,132 plus interest from the date of taking. Plaintiff commenced this appeal seeking a new trial because of two prejudicial errors it says were committed by the trial court: (1) exclusion of certain cross-examination of defendant; and (2) admission of evidence with regard to depreciating effect of gas line on remainder.

## II

The first contention centers around the circumscription of plaintiff's cross-examination of defendant Bass. On direct examination defendant had testified that at the time of the taking—on August 25, 1981—the value of his acreage "would be at least five thousand dollars an acre." On cross-examination, the plaintiff's attorney sought to question defendant about an appraisal made by court-appointed appraisers on January 30, 1979, in connection with a partition suit brought by defendant. Plaintiff wanted to acquaint the jury with the fact that the 1979 appraisal was $224 an acre. Defendants' objection to the line of questioning was sustained and plaintiff made "a record" saying it should be permitted to ask the witness about the "appraisal price of court-appointed appraisers on January 30, 1979" and to confront the witness with a certified copy of the report showing the

appraisers thought the value was $224 an acre. The argument was and is that "such evidence is vital on cross-examination because it goes to his [defendant's] credibility as well as in the nature of impeachment of the high values that he has placed on the premises."

■ The trial judge quite properly refused to allow such questioning because, as the court acutely observed, it had no impeachment value but was merely a subterfuge designed to get the 1979 appraisal into evidence. "[H]e has not testified as to any value in 1979," said the court, "[s]o, you cannot impeach him on that value because he has not given an opinion on it.... You're going to be permitted to call witnesses to that, but you're not going to be able to permit appraisers that appraised at some other time to show their testimony through this witness."

Whether the 1979 appraisal was admissible at all is subject to some doubt because of changed conditions relating to the property. Beyond that, the fact remains that what plaintiff was attempting to do was to "impeach" defendant's opinion regarding value by showing someone else had a different opinion nearly three years before— an effort manifesting an incredible indifference to logic. For to argue that a layman who states an opinion concerning land values can be impeached by getting him to admit he knew that someone else previously entertained a different one offends common sense as well as basic rules of evidence.

■ Generally speaking, cross-examination is available to achieve two things: (1) develop relevant truth related to matters covered on direct examination; and (2) impeach the veracity or credibility of a witness. It has long been the rule, for instance, that a witness may not be impeached with regard to collateral, irrelevant, or immaterial matters. *Faulkenberry v. Kansas City Southern Ry.*, 661 P.2d 510, 514 (Okla.1983). Nor does a party have a right to cross-examine on facts and circumstances not connected with matters stated during direct examination. *Smith v.*

*Missouri, K. & T. Ry.*, 76 Okl. 303, 306, 185 P. 70, 73 (1919). Both *Faulkenberry* and *Smith* declare that cross-examination should not be permitted with regard to remote facts and circumstances. And finally, the *Smith* decision declares that if a party wishes to establish matters not covered on direct, he should make the witness his own and recall him at the appropriate time during the progress of the trial.

Our new evidence code has not changed these rules. See 12 O.S.1981 §§ 2607–2609; 2401–2402 and accompanying comments of the Evidence Subcommittee in Oklahoma Statutes Annotated.

So our conclusion is that the challenged ruling was correct. Plaintiff does not complain of being deprived of an ample opportunity to otherwise try to get the 1979 appraisal before the jury.

### III

■ Plaintiff's second proposition assails the trial court for overruling its objection to defendants' expert witness's testimony regarding the detrimental effect of the pipeline on the value of the property lying near the right-of-way. We conclude this complaint has no merit either.

Bass's expert witness, Charles Downum, testified that the highest and best use of the land was residential housing. For this use, the value of the property when it was taken was "from five to eight thousand dollars an acre." The value of defendants' property, said the witness, was reduced $46,725 as a result of the 6.23 acres taken. He arrived at this figure by multiplying $5,000 an acre by the 6.23 acres taken and adding a reduction in value of the remainder of $15,575 which he attributed to the psychological fear factor arising from the existence of the high pressure pipeline on residential property. This $15,575 figure was based on the conclusion that land 50 feet on each side of the right-of-way was sufficiently undesirable to reduce those strips' value to $2,500 per acre. Or as explained by the witness, "I added an additional fifty foot on each side of that be-

cause you have problems trying to sell property to buyers when you have a major gas line running adjacent to a housing tract or through developments. ... I feel that you have to have that because of the psychological as well as a possible real reason ...," that is, "the fear of an explosion."

It is the $15,575 portion of the reduction that plaintiff condemns as being based on an impermissible speculative element of damages. The argument is that "such fear of potential danger of living close to a gas pipeline may be considered in arriving at value, but that same does not constitute an independent element of damages for which a specific award may be made."

■ While it is true that a specific award may not be made for pipeline-related fear as such, the fear factor may be considered along with other component consequences of the taking contributing to the depreciation in the fair market value of the property. The distinction is emphasized in *State v. Weaver,* 297 P.2d 549 (Okla.1956), and *Oklahoma Gas & Electric Co. v. Kelly,* 177 Okl. 206, 58 P.2d 328 (1936).

■ "The ultimate question for the jury to determine in this class of cases is the value of the land actually taken, and if less than the whole tract is taken, how much that portion not taken is diminished in market value in consequence of the taking," said the court in *Champlin Refining Co. v. Donnell,* 173 Okl. 527, 529, 49 P.2d 208, 211 (1935). Ordinarily evidence will take the form of a before and after taking value of the entire tract, but as the court pointed out in *Tulsa County Drainage Dist. No. 12 v. Stroud,* 198 Okl. 688, 181 P.2d 1000 (1947), since there are two elements of damage to the owner, a witness may testify specifically as to the value of the tract taken and then as to the damage to the remainder due to the taking.

The observations of plaintiff concerning the shortcomings of defendants' expert testimony are to some extent well taken. One gets the impression from reading it that defendants' expert may not have been quite sure of what the evidentiary objective was. He seemed unsure of certain relevant facts. We can agree that some of plaintiff's objections probably should have been sustained, particularly those relating to value or damage testimony not directly bearing on the before and after fair market value of the entire tract. However, when the testimony is read as a whole and in connection with other evidence, and consideration is given to the fact that the jury manifested a lack of confidence in it by awarding considerably less than defendants' expert recommended, we conclude the questionable rulings did not result in a miscarriage of justice.

IV

The parties were afforded a fair, if not a perfect, trial. While defendant asked for an attorney fee award in his demand for a jury trial, none has apparently been granted so far in the trial court and none has yet been specifically requested in this court as authorized by 27 O.S.1981 § 7; 66 O.S.1981 § 55(D); and 66 O.S.1981 § 57. The judgment appealed is affirmed and costs are taxed against ARKLA.

STUBBLEFIELD and RAPP, JJ., concur.