**John J. FRANKS, M.D.,
Plaintiff-Appellant,**

v.

**Robert P. NIMMO, United States Veterans Administration, T.P. Mullon, Mansell G. Piper, William S. Hammond, M.D., and Philip A. Varneck, Defendants-Appellees.**

No. 83–2672.

United States Court of Appeals,
Tenth Circuit.

July 7, 1986.

Richard J. Wedgle of Cox, Wedgle & Padmore, P.C., Denver, Colo., for plaintiff-appellant.

Nancy E. Rice, Asst. U.S. Atty. (Robert N. Miller, U.S. Atty., with her on brief), Denver, Colo., for defendants-appellees.

Before HOLLOWAY, Chief Judge, McWILLIAMS, and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

John J. Franks, M.D., brought this lawsuit asserting claims arising out of proceedings to terminate his employment as Associate Chief of Staff (ACOS) for Research at the Veterans Administration Medical Center (VAMC) in Denver, Colorado. Named as defendants in their official capacities are Robert S. Nimmo, administrator of Veterans' Affairs, and T.P. Mullon, Regional Director. Mansell Piper, who was the VAMC Director, William Hammond, who was Chief of Staff and Dr. Franks' immediate supervisor, and Philip Varneck, who was the VAMC Personnel Director, are sued both in their official capacities and individually. Dr. Franks asserted that defendants improperly treated him as a probationary employee, or were estopped from claiming that he was probationary. Alternatively, Dr. Franks argued that, if he was on probation, defendants failed to reduce his probationary period by creditable time and failed to follow the administrative procedures governing termination of probationary employees. Dr. Franks also asserted claims based on alleged constitutional and common law torts, and attempted to disqualify the trial judge. The trial judge refused to disqualify himself and granted summary judgment for defendants on all issues. We affirm.

This lawsuit was instituted after administrative separation proceedings had begun but before any decision had been reached. Dr. Franks obtained a preliminary injunction directing defendants to treat him as a non-probationary employee, which had the effect of halting the termination process until this court vacated the injunction. *See Franks v. Nimmo*, 683 F.2d 1290 (10th Cir.1982). Although the relevant facts up to that point in the proceedings are set out in that opinion, we briefly repeat them here to help place subsequent events in context. We will discuss in detail facts relevant to specific issues on appeal when we address those issues individually.

Dr. Franks began his employment in 1969 with the Department of Medicine and Surgery of the Veterans Administration (VA) at the VAMC. He served as a temporary part-time employee until July 1980, when he agreed to accept a full-time permanent appointment. Subsequently, the hospital director received complaints from researchers about Dr. Franks' administration and requested a site visit team to evaluate Dr. Franks' performance of his administrative duties. Following a visit in May 1981, the site visit team recommended that Dr. Franks be relieved of his administrative position as ACOS, but did not evaluate or make recommendations with respect to Dr. Franks' work at the VAMC as a medical researcher and instructor. When attempts by Dr. Franks and VA officials to resolve the situation failed, administrative separation proceedings were begun in July 1981.

At the time administrative action was taken regarding Dr. Franks' termination, he had served as full-time ACOS less than one year and defendants were then treating him as a probationary employee under the applicable statutes and regulations. The appointment of permanent full-time physicians is made pursuant to 38 U.S.C. § 4104 (1982) and is governed by section 4106, which provides:

"Such appointments as described in subsection (a) of this section shall be for *a probationary period of two years* and the record of each person serving under such appointment in the Medical, Dental, and Nursing Services shall be reviewed from time to time by a board, appointed in accordance with regulations of the Administrator, and if said board shall find him not fully qualified and satisfactory he shall be separated from the service."

*Id.* § 4106(b) (emphasis added). Before the section 4106(b) procedures had been completed, Dr. Franks obtained an injunction directing defendants to accord him non-probationary status. After this court vacated the injunction, a review board met pursuant to section 4106(b). The board subsequently recommended Dr. Franks' separation, which was to become effective on July 23, 1982. On that date Dr. Franks filed a motion to postpone final agency action.

Following proceedings before the district court that same day, Dr. Franks and defendants stipulated that Dr. Franks would continue employment in another position at the VAMC pending resolution of this suit in the district court.

Both parties subsequently moved for partial summary judgment. In March 1983, the court granted defendants' motion, ruling as a matter of law that Dr. Franks' status was that of a probationary employee. Defendants then filed a motion for summary judgment on the remaining issues. Dr. Franks thereafter moved to disqualify the district judge, alleging grounds arising out of the proceedings held July 23, 1982, during which the court had been involved in encouraging the parties to reach the stipulation referred to above. The court denied the motion to disqualify and subsequently granted defendants' motion for summary judgment on the remaining issues. The court also denied a motion by Dr. Franks to amend his complaint for the third time. On appeal Dr. Franks contends that the district judge erred in failing to disqualify himself, in ruling as a matter of law that Dr. Franks was a probationary employee, in denying his motion to amend the complaint, and in granting summary judgment for defendants on the constitutional tort claims.

## I.

### RECUSAL

Dr. Franks filed a motion to disqualify the trial judge under 28 U.S.C. §§ 144, 455(a), and 455(b)(1) (1982). In his supporting affidavit, Dr. Franks stated that during the July 23 hearing on the motion to stay his termination, the judge called counsel for both sides into his chambers, and then spoke with Dr. Franks alone. Dr. Franks further stated that the judge told him these matters never work out for a plaintiff unless they are settled, and that he ought to settle because the judge could not rule in his favor on the injunction issue. Dr. Franks stated his belief that the judge was biased, and that he had prejudged the case and created an appearance of impropriety.

In response, defendants presented a statement made by their co-counsel as an officer of the court, and an affidavit by an attorney for the VAMC. Both attorneys were present at the July 23 hearing. Their documents state that Dr. Franks' wife was having emergency surgery on that day or the next, and that Dr. Franks was distraught and unable to concentrate. The judge expressed concern because, having heard the evidence, he believed he would have to rule against Dr. Franks, and that if Dr. Franks were terminated that day he could lose VA employee health insurance coverage for his wife. The judge was also concerned because ruling against Dr. Franks would interrupt the doctor's ongoing research which the judge believed to be of substantial importance as Dr. Franks had described it. The judge asked defendants whether they would consider an agreement under which Dr. Franks would be offered an alternative temporary position pending resolution of all the issues in the district court, and defendants ultimately agreed. When Dr. Franks' counsel questioned whether the doctor would accept the offer, all counsel agreed to the suggestion that the judge talk to Dr. Franks and explain the situation to him. Significantly, Dr. Franks did not rebut defendants' statements describing these circumstances with an affidavit from his former counsel who was a participant, and there is no transcript of the proceedings in the record on appeal.

■ We conclude that disqualification is not warranted under either statute relied on by Dr. Franks. Section 144 provides in pertinent part:

"Whenever a party to any proceeding in a district court makes and files a *timely* and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding."

*Id.* § 144 (emphasis added). "By the terms of section 144, a district court judge must

recuse himself in any proceeding upon the filing of a timely and sufficient affidavit of personal bias or prejudice, even if he has no actual personal bias or prejudice." *United States v. Hines,* 696 F.2d 722, 728 (10th Cir.1982). In *Hines* we noted that "the timeliness of the affidavit must ... be judged by a standard of reasonableness in light of the given facts." *Id.* at 728 n. 8.

In this case, the disqualification motion was filed over a year after the proceedings giving rise to the alleged bias. During that interval, Dr. Franks filed a motion for partial summary judgment which the district court decided adversely to him, and he also changed attorneys. When Dr. Franks filed his disqualification motion, defendants' motion for summary judgement on the remaining issues was pending before the same district judge.

In evaluating the timeliness of a section 144 motion, "courts will often consider whether the affiant has participated in substantial pre-trial motions between the time he first learned of the asserted bias and the time he filed the § 144 request." *Smith v. Danyo,* 585 F.2d 83, 86 (3d Cir.1978). We find it significant that Dr. Franks filed an unsuccessful motion for partial summary judgment with the trial judge *after* the alleged bias had arisen. "The judicial process can hardly tolerate the practice of a litigant with knowledge of circumstances suggesting possible bias or prejudice holding back, while calling upon the court for hopefully favorable rulings, and then seeking recusal when they are not forthcoming." *Id.*

The district judge here pertinently concluded that

"if Dr. Franks had believed that I had indicated a prejudice toward his case, he would have told his attorneys immediately, and his attorneys, who were litigating strenuously in his behalf, would have conveyed that to my attention. Counsel that he had employed prior to this time,

as well as current counsel, were strenuous advocates in his behalf, and it is beyond my consideration that those advocates, had they believed I had manifested a prejudice against Dr. Franks, would have let that matter pass or stand for eleven months."

Rec., vol. VIII, at 4. Given all these circumstances, we agree with the trial court that the motion under section 144 was not timely.

We also uphold the trial judge's refusal to disqualify himself under sections 455(a) and (b)(1). Those provisions state:

"(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

"(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding...."

28 U.S.C. §§ 455(a), (b)(1). The effective scope of section 455 is broader than that of section 144, in part because it contains no express procedural hurdles. *See Hines,* 696 F.2d at 728.[1]

"[W]hile subsection (b)(1) requires recusal if the judge has actual personal bias or prejudice or extrajudicial knowledge of disputed evidentiary facts, subsection (a) requires recusal merely if the circumstances are such that the judge's 'impartiality might be reasonably questioned'.... Under section 455(a), the judge is under a continuing duty to ask himself what a reasonable person knowing all the relevant facts would think about his impartiality."

*Id.* (quoting *United States v. Ritter,* 540 F.2d 459, 462 (10th Cir.), *cert. denied,* 429

---

1. In *Hines,* although we rejected the proposition that "section 144 procedural requirements are impliedly applicable to a section 455 motion," 696 F.2d at 729, we were "not prepared to say that timeliness should always be disregarded with respect to section 455 recusals," *id.* Here, as in *Hines,* other grounds support affirmance of the refusal to recuse under § 455 and thus we need not reach the timeliness issue.

U.S. 951, 97 S.Ct. 370, 50 L.Ed.2d 319 (1976)).

■ In this case, the district court stated that "no ordinary man in ordinary circumstances could have believed from our conversation, initiated at the behest of his attorney, and with the concurrence of the defendants' counsel, that I had acted in a manner either prejudicial or biased, prejudicial to or biased against him." Rec., vol. VIII, at 4. We agree with the judge that his attempts to encourage a settlement clearly beneficial to Dr. Franks do not give rise to an objective appearance of bias within the meaning of section 455(a). *See, e.g., Johnson v. Trueblood*, 629 F.2d 287, 291 (3d Cir.1980), *cert. denied*, 450 U.S. 999, 101 S.Ct. 1704, 68 L.Ed.2d 200 (1981). "[S]ection 455(a) must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice." *Hines*, 696 F.2d at 729. Moreover, in view of the court's concern on Dr. Franks' behalf, we find no record evidence of any actual bias against Dr. Franks within the ambit of section 455(b)(1).

## II.

### PROBATIONARY STATUS

Although Dr. Franks' arguments regarding the district court's rulings on his probationary status are poorly organized and repetitive, he appears to contend that summary judgment on this issue was improper because: (1) the court misconstrued the statutes to require a physician in his situation to serve a probationary period; (2) the court erred in ruling that he was not entitled to reduce his probationary period by time spent in temporary status; and (3) the court erred in rejecting his argument that

defendants were estopped from claiming he was a probationary employee.[2]

■ When reviewing a grant of summary judgment, this court must examine the record to determine whether any genuine issue of material fact pertinent to the ruling remains and, if not, whether the substantive law was correctly applied. *Western Casualty & Surety Co. v. National Union Fire Insurance Co.*, 677 F.2d 789, 791 n. 1 (10th Cir.1982). Under Fed.R. Civ.P. 56, the movant must demonstrate beyond doubt that he is entitled to a favorable ruling. *Madison v. Deseret Livestock Co.*, 574 F.2d 1027, 1037 (10th Cir.1978). In making this evaluation, pleadings and documentary evidence are to be construed liberally in favor of the party opposing the motion. *Harman v. Diversified Medical Investment Corp.*, 488 F.2d 111, 113 (10th Cir.1973), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1727, 48 L.Ed.2d 195 (1976).

■ The district court concluded as a matter of law that the two-year probationary period of section 4106(b) applies to doctors who convert from temporary status under section 4114 to full-time status under section 4104. We agree. Section 4106(b) unequivocally requires all appointees under section 4104 to serve a probationary appointment, and makes no provision or exception for physicians who move from temporary to permanent appointment. Neither defendants nor the courts may create an exception at odds with an express statutory requirement. *See, e.g., Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 212–14, 96 S.Ct. 1375, 1390–91, 47 L.Ed.2d 668 (1976).

■ We likewise find no merit in Dr. Franks' argument that defendants failed to properly accord him creditable service. He contends that he is entitled to have prior service credited toward completion of the

---

2. In his complaint Dr. Franks also alleged that, even assuming his probationary status, defendants failed to follow the administrative procedures required for the separation of probationary employees. Dr. Franks appears to renew this issue obliquely in his brief on appeal. The district court held that "the administrative record demonstrates that defendants not only followed the proper procedures, but that Dr. Franks was given more procedural consideration than required," rec., vol. III, at 325, and that "there can be no material dispute of fact regarding defendants' compliance with the applicable administrative procedures," *id.* at 326. Upon review of the record, we agree.

section 4106(b) probationary period under regulations that allow credit for:

"e. Satisfactory service of at least 6 months' duration *in a probationary period* prior to a break in service of 1 year or less. However, prior employment may be credited only when the break in service results from the employee's resignation or involuntary separation through no fault of his own. A break in service is defined for the purpose of this subparagraph as a period during which no service is rendered under authority of 38 U.S.C. ch. 73.

"f. Satisfactory service *in a probationary period* served under authority of 38 U.S.C. ch. 73 prior to holding some other type of appointment in the Department of Medicine and Surgery if the employee is subsequently appointed under 38 U.S.C. 4104(1), provided the conditions of subparagraph e, above, are met.

"g. Time spent *in a probationary period* prior to separation for active military service and the time spent while on active duty if the employee exercises his statutory restoration rights."

Rec., vol. XI, def. ex. G (Department of Medicine and Surgery's Supplement to the VA Manual of Procedures, Chapter 4, Para. 5 e, f, g) (emphasis added). However, these provisions apply only to time spent in a prior probationary period. Defendants could not by regulation exempt a section 4104 appointee from serving the probationary period mandated by section 4106(b). *See Ernst & Ernst*, 425 U.S. at 212–14, 96 S.Ct. at 1390–91. The record contains no evidence that Dr. Franks' prior service occurred during a probationary period within the meaning of the applicable regulations.

■ Dr. Franks also argues that defendants are estopped by their conduct from denying him nonprobationary status. The circumstances, if any, giving rise to estoppel against the Government have been a source of confusion. The Supreme Court has declined to hold that estoppel can never run against the Government. *See Heckler v. Community Health Services*, 467 U.S. 51, 60–61, 104 S.Ct. 2218, 2224, 81 L.Ed.2d

42 (1984). In that case, the Court nevertheless restated the well settled rule that "the Government may not be estopped on the same terms as any other litigant," and concluded that "the private party surely cannot prevail without at least demonstrating that the traditional elements of an estoppel are present." *Id.* A plaintiff invoking estoppel against the Government must show at a minimum that he relied on the Government's misconduct in changing his position for the worse. *Id.* at 59–63, 104 S.Ct. at 2223–24; *see also Lurch v. United States*, 719 F.2d 333, 341 (10th Cir.1983), *cert. denied*, 466 U.S. 927, 104 S.Ct. 1710, 80 L.Ed.2d 182 (1984).

■ The detrimental change in position in this case was Dr. Franks' conversion on July 27, 1980 from temporary part-time to permanent full-time status, with its attendant probationary period. Only actions by defendants which occurred before that date and upon which Dr. Franks relied in deciding to convert can give rise to a claim of estoppel. Although Dr. Franks cites numerous examples of defendants' conduct which he claims comport with nonprobationary status, these acts occurred after his conversion. Because Dr. Franks obviously could not have relied on these acts in making his decision, they cannot form the basis for estoppel.

■ Dr. Franks asserts that summary judgment was improper because he presented evidence that several defendants represented to him on or about the date he converted to permanent status that he would not have to serve a probationary period. The record reveals that during a hearing before the district court on his motion for a preliminary injunction, Dr. Franks was asked by his own counsel to describe all the statements defendants made to him concerning his status when he converted on July 27, 1980. Dr. Franks responded: "No statements were made at all regarding probationary status to me at that time." Rec., supp. vol. I, at 40. Later during that hearing Dr. Franks stated on cross-examination: "No one told me that I would get the rights [of a tenured civil

servant]. I assumed—that was an assumption on my part." *Id.* at 82. He then agreed that the matter was simply something that had not been discussed at all.[3] *Id.* at 82, 83.

In August 1983, Dr. Franks filed a motion with the district court seeking reconsideration of the court's ruling that he was a probationary employee. Notwithstanding his earlier testimony, Dr. Franks attached an affidavit to this motion in which he declared that on or about the date of his conversion, defendants "all represented to me that I was a permanent employee and would not have to comply with any probationary provisions." *Id.*, vol. III, at 269. Therefore we must decide whether the conflict between Dr. Franks' testimony and his subsequent affidavit is sufficient to preclude summary judgment against him. We conclude that, under the circumstances of this case, summary judgment should be upheld.

■ There is authority for the proposition that in determining whether a material issue of fact exists, an affidavit may not be disregarded because it conflicts with the affiant's prior sworn statements. *See* 10A C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 2738, at 473–74 (2d ed. 1983); 6 (Part 2) J. Moore & J. Wicker, Moore's Federal Practice ¶ 56.22[1], at 56–1325 to 56–1326 (1985 ed.). In assessing a conflict under these circumstances, however, courts will disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue. *See, e.g., Foster v. Arcata Associates, Inc.,* 772 F.2d 1453, 1462 (9th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1267, 89 L.Ed.2d 576 (1986); *Biechele v. Cedar Point, Inc.,* 747 F.2d 209, 215 (6th Cir. 1984); *Van T. Junkins & Associates, Inc. v. U.S. Industries, Inc.,* 736 F.2d 656, 657–58 (11th Cir.1984); *Camfield Tires, Inc. v.*

*Michelin Tire Corp.,* 719 F.2d 1361, 1364 (8th Cir.1983); *Perma Research & Development Co. v. Singer Co.,* 410 F.2d 572, 578 (2d Cir.1969). Underlying those decisions is the conclusion that the utility of summary judgment as a procedure for screening out sham fact issues would be greatly undermined if a party could create an issue of fact merely by submitting an affidavit contradicting his own prior testimony. *Camfield Tires,* 719 F.2d at 1365.

■ Factors relevant to the existence of a sham fact issue include whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain. *See Camfield,* 719 F.2d at 1364–65; *Perma Research,* 410 F.2d at 578. These factors convince us that Dr. Franks' affidavit should be disregarded in considering the propriety of summary judgment. He was carefully cross-examined when he gave his earlier testimony, and as a participant in the alleged conversations he clearly had access to the relevant evidence at that time. Moreover, his affidavit makes no reference to his earlier contrary statements, and his earlier testimony is unequivocal. We also note that the affidavit was offered only after summary judgment had been granted against him on that issue. Under these circumstances, we must conclude that this is one of those unusual cases in which the conflict between the testimony and the affidavit raises only a sham issue.

■ Accordingly, Dr. Franks has failed to create a genuine factual dispute regarding his alleged detrimental reliance on defendants' misconduct in his conversion to

---

**3.** Dr. Franks argues that the district court's consideration of the preliminary injunction transcript in granting summary judgment was improper. This argument is patently frivolous. The federal rules provide that "any evidence received upon an application for a preliminary injunction which would be admissible upon the trial on the merits becomes part of the record on the trial...." Fed.R.Civ.P. 65(a)(2). Rule 56(e) provides that summary judgment motions may be supported by affidavits supplemented with depositions. Dr. Franks' sworn testimony, subjected to cross-examination, clearly falls within the scope of Rule 56.

permanent status, and summary judgment was properly granted denying his claim of estoppel.[4]

## III.

### CONSTITUTIONAL TORT CLAIMS

In his complaint, Dr. Franks sought damages for the alleged deprivation of his constitutional rights to due process and free speech.[5] The district court pointed out that a federal employee such as Dr. Franks, who is provided administrative proceedings in which to challenge his removal, may be precluded under *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), from bringing an implied constitutional cause of action for damages. The court then held that, even assuming Dr. Franks could bring such an action, defendants are entitled to qualified immunity under *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

We conclude that the implied cause of action Dr. Franks seeks to assert is barred by the rationale applied in *Bush.* There, a federal employee covered by the federal civil service statutes and regulations brought a nonstatutory damage action for violation of his First Amendment rights on the authority of *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The court in *Bush* recognized that under *Bivens* an implied cause of action may exist for the denial of constitutional rights by a federal defendant. However, the Court also pointed out that a *Bivens* action may be defeated either when special factors are present counseling hesitation in the ab-

sence of affirmative action by Congress or when Congress intends that an alternative remedy it has provided is exclusive. *Bush,* 462 U.S. at 377–78, 103 S.Ct. at 2411–12. The Court then concluded that the federal employee's attempt to recover damages from his superior for violation of his First Amendment rights involved two special factors counseling hesitation: the special nature of the government employment relationship, and the need to operate government facilities effectively. The Court observed that

" '[t]he relations between the United States and its employees have presented a myriad of problems with which the Congress over the years has dealt.... Government employment gives rise to policy questions of great import, both to the employees and to the Executive and Legislative Branches.' ... The decision regarding indemnity involve[s] questions of employee discipline and morale, fiscal policy, and the efficiency of the federal service."

*Id.* at 379–80, 103 S.Ct. at 2412 (*quoting United States v. Gilman,* 347 U.S. 507, 509, 74 S.Ct. 695, 696, 98 L.Ed. 898 (1954)). Those factors are present in the instant case. *See Heaney v. United States Veterans Administration,* 756 F.2d 1215, 1220–21 (5th Cir.1985).

The Court in *Bush* concluded that, given the above policy considerations, the existence of an administrative remedy providing some measure of relief from adverse employment decisions constituted an additional special factor which, when considered with the others, precluded judicial creation

---

4. Dr. Franks asserts that the district court improperly denied his request to amend his complaint a third time. Denial of leave to amend under Fed.R.Civ.P. 15(a) is committed to the trial court's discretion. *See State Distrib., Inc. v. Glenmore Distilleries Co.,* 738 F.2d 405, 416 (10th Cir.1984). We find no abuse here. To the extent that Dr. Franks sought to add claims for fraud and misrepresentation, based on alleged statements made regarding his nonprobationary status, our holding that he failed to raise a fact issue regarding those statements is dispositive. To the extent that Dr. Franks wanted to add new claims and new parties, his motion, made two years after the case was filed and after

discovery had been completed and partial summary judgment granted, was untimely. *See id.; see also Brown-Marx Assoc., Ltd. v. Emigrant Sav. Bank,* 703 F.2d 1361, 1371 (11th Cir.1983).

5. Dr. Franks also asserted common law claims against defendants Piper, Hammond, and Varneck individually for outrageous conduct inflicting severe emotional and physical distress. The district court ruled that defendants were absolutely immune under *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). Dr. Franks has not contested this ruling on appeal.

of a nonstatutory remedy. *See Heaney,* 756 F.2d at 1220. The procedures available to the civil servant plaintiff in *Bush* were determined to be adequate even though they were not an equally effective substitute for an implied damage remedy. In finding the existing remedy meaningful, the Court emphasized that an employee could present constitutional claims arising from the adverse personnel decision, receive judicial review of the administrative proceedings, and obtain retroactive reinstatement and back pay. *See Bush,* 462 U.S. at 385–86 & n. 29, 103 S.Ct. at 2414–15 & n. 29.

After reviewing the procedures available to an employee in the competitive civil service system, the Court weighed "respective costs and benefits that would result from the addition of another remedy for violations of employees' First Amendment rights." *Id.* at 388, 103 S.Ct. at 2417. The Court pointed out that "[t]he costs associated with the review of disciplinary decisions are already significant—not only in monetary terms, but also in the time and energy of managerial personnel who must defend their decisions." *Id.* The Court then concluded that any new constitutional remedy should be created by Congress and not the courts, because

> "Congress is in a far better position than a court to evaluate the impact of a new species of litigation between federal employees on the efficiency of the civil service. Not only has Congress developed considerable familiarity with balancing governmental efficiency and the rights of employees, but it also may inform itself through factfinding procedures such as hearings that are not available to the courts."

*Id.* at 389, 103 S.Ct. at 2417. Those considerations are equally applicable here. *See Heaney,* 756 F.2d at 1219.

Dr. Franks argues that the rationale in *Bush* should not apply in this case because he is not a civil service employee and does not have the comprehensive administrative review rights of such employees. This argument was presented by a VA physician and rejected in *Heaney.* It is true that employees of the Department of Medicine and Surgery are not protected by the same provisions available to the plaintiff in *Bush. See, e.g.,* 38 U.S.C. §§ 4106(a), 4106(d), 4119. Nonetheless, we agree with the court in *Heaney* that this argument is unpersuasive in view of the administrative procedures that Congress has provided to these employees, and the Court's conclusion in *Bush* that the administrative remedy need not fully compensate the employee to be exclusive.

Under the authority of section 4106(b), each employee serving a probationary period receives peer review of his record by a Professional Standards Board (PSB) made up of physicians. *See* Rec., vol. XI, def. ex. G (Department of Medicine and Surgery's Supplement to the VA Manual of Procedures, Chapter 4, Part 4). The statute provides for removal "if said board shall find him not fully qualified and satisfactory...." 38 U.S.C. § 4106(b). If the peer review reveals evidence that the employee's performance is not satisfactory, he is notified in writing of the reasons for review and of his right to appear personally before the PSB or to submit a written statement on his own behalf. *Id.* Here Dr. Franks was given an opportunity to respond to the site visit team report and to appear before the PSB. The adverse decision of the PSB was then reviewed and approved by a second board of physicians before it was submitted to the appropriate supervising official. It is undisputed that the members of the two peer review boards were physicians drawn from outside the VAMC who had no connection with the controversy there.

A probationary VA physician who is separated from service under section 4106(b) may obtain judicial review of the administrative decision. *See, e.g., Giordano v. Roudebush,* 617 F.2d 511 (8th Cir.1980); *see also Heaney,* 756 F.2d at 1219 (physician discharged under 38 U.S.C. 4110 entitled to judicial review). Such an administrative decision is a final agency action which may be appealed to a federal court

pursuant to the Administrative Procedure Act. Under the Act, the administrative decision may be set aside if it is arbitrary or capricious, 5 U.S.C. § 706(2)(A) (1982), or unconstitutional, *id.* § 706(2)(B); *Stretton v. Wadsworth Veterans Hospital,* 537 F.2d 361, 369 n. 19 (9th Cir.1976). A physician who has been wrongfully discharged may obtain judicial relief in the form of reinstatement and back pay. *See Giordano,* 617 F.2d at 514–15. Thus this is not, as Dr. Franks alleges, a case of damages for the constitutional tort or nothing at all. In addition, the court has power to grant interim equitable relief such as Dr. Franks obtained in the instant case. *See, e.g., Stretton,* 537 F.2d at 369. As in *Bush,* a plaintiff such as Dr. Franks has a forum in which to present constitutional claims, may receive judicial review of the administrative proceedings, and may obtain meaningful relief in the form of reinstatement and back pay.

Moreover, the legislative history of the procedures at issue here indicates that in removing permanent appointments under section 4104 from civil service requirements, Congress intended " 'to free the Veterans Administration from some of the shackles that now, we think, act as an impediment and deterrent to the best medical service.' " *Kenneth v. Schmoll,* 482 F.2d 90, 95 (10th Cir.1973) (*quoting* 91 Cong.Rec. 11658 (1945)). In so doing Congress clearly intended to provide a summary process by which unqualified physicians previously protected by civil service could be expeditiously separated from service. *See Heaney,* 756 F.2d at 1218–19; *Orloff v. Cleland,* 708 F.2d 372, 376–77 (9th Cir. 1983); *Giordano,* 617 F.2d at 517 & n. 9; *Stretten,* 537 F.2d at 368. Allowing the additional remedy of an implied cause of action would thus thwart the express Congressional intent that probationary employees be subject to separation after summary review.

> "Congress has chosen to exercise its special expertise and prerogative by providing a less protective system for Veterans Administration medical personnel than for ordinary civil servants, and that is

precisely the kind of decision that *Bush* acknowledges the legislature is in the better position to make than are the courts."

*Heaney,* 756 F.2d at 1222 n. 3.

 Accordingly, we conclude that a probationary permanent employee in the Department of Medicine and Surgery may not bring an implied damage action alleging constitutional violations arising out of the termination of his employment. We have examined Dr. Franks' remaining allegations of error and find them to be without merit.

The judgment of the district court is affirmed.