2005 OK CIV APP 106

Leslie SAVAGE, Individually and as Wife and Personal Representative of the Estate of Timothy James Moore, Deceased, Plaintiff/Appellant,

v.

David BURTON, Defendant,

and

State Farm Mutual Automobile Insurance Company, Defendant/Appellee.

No. 101,892.

Court of Civil Appeals of Oklahoma, Division No. 1.

Nov. 15, 2005.

Mike Gassaway, Oklahoma City, OK, for Plaintiff/Appellant.

William J. Molinsky, Jr., Oklahoma City, OK, for Defendant/Appellee.

Opinion by ROBERT DICK BELL, Judge.

¶ 1 Plaintiff/Appellant Leslie Savage, individually and as the surviving wife and personal representative of the estate of Timothy James Moore, deceased, appeals the trial court's summary judgment precluding Plaintiff's claim against Defendant/ Appellee State Farm Mutual Automobile Insurance Company (State Farm), for uninsured/under-insured motorists (UM) benefits. For the reasons discussed hereinafter, we affirm.

¶ 2 Timothy James Moore (decedent) was driving a 1993 Cadillac owned by his mother-in-law, Gwendolyn Barker, when he was shot to death by Defendant David Burton. The 1993 Cadillac was insured under State Farm automobile insurance Policy No. 032–0392–FP2–36. Barker expressly waived UM coverage under Policy No. 032–0392–FP2–36. Barker also owned three other vehicles which were insured under State Farm automobile insurance Policy No. 246–2801–C13–36H. This was the only policy that provided UM coverage. The 1993 Cadillac was not a cov-

ered vehicle under Policy No. 246–2801–C13–36H.

¶3 Plaintiff brought the instant action against Burton for negligence and road rage. Plaintiff specifically alleged Burton accidentally and negligently killed decedent by shooting him to death with a firearm. Plaintiff's amended petition asserted a claim against State Farm for UM benefits.

¶4 State Farm sought summary judgment against Plaintiff's claim on the basis that decedent did not qualify as an "insured" under the policies issued to Barker because decedent was not married to or a "relative" of the named insured under the terms of the policy that provided UM coverage. State Farm also insisted the vehicle decedent occupied at his death did not have UM coverage. Plaintiff's opposition to the motion for summary judgment asserted decedent's status as Barker's "relative" was controverted because her evidentiary material evidenced that decedent primarily resided with his mother-in-law at the time of his death.

¶5 The trial court granted State Farm's motion for summary judgment. It found decedent's estate could not recover UM benefits because decedent was not an "insured" under the insurance policies which were issued to non-party Barker. Plaintiff appealed.[1] The matter stands submitted for accelerated appellate review on the trial court record under Rule 13(h), *Rules for District Courts*, 12 O.S. Supp.2002, Ch. 2, App. 1, and Rule 1.36, *Oklahoma Supreme Court Rules*, 12 O.S. Supp.2003, Ch. 15, App.

¶6 The sole proposition on appeal is whether the trial court erred in finding as a matter of law there was no UM coverage because decedent was not an insured under the insurance policies. This Court's standard of review of a trial court's grant of summary judgment is *de novo*. *Hoyt v. Paul R. Miller, M.D., Inc.*, 1996 OK 80, ¶2, 921 P.2d 350, 351–52. Summary judgment is proper when the evidentiary materials "es-tablish that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Shelley v. Kiwash Elec. Co-op., Inc.*, 1996 OK 44, ¶15, 914 P.2d 669, 674. When this Court reviews the trial court's grant of summary judgment, all inferences and conclusions drawn from the evidence must be viewed in the light most favorable to the party opposing the motion. *Id.*

¶7 At issue in the trial court was whether decedent qualified as an "insured" under Policy No. 246–2801–C13–36H. This policy defined the term "insured" as:

> **Insured**—means the **person** or **persons** covered by uninsured motor vehicle coverage.
>
> This is:
>
> 1. the first **person** named in the declarations;
>
> 2. his or her **spouse;**
>
> 3. their **relatives;** and
>
> 4. any other **person** while **occupying** :
>
>    a. **your car,** a **newly acquired car** or a trailer attached to such **car.** Such vehicle has to be used within the scope of the consent of **you** or **your spouse;** or
>
>    b. a **car** not owned by or leased to **you, your spouse** or any **relative,** or a trailer attached to it if that other **person** does not own a **car.** The **car** has to be driven by the first **person** named in the declarations or that **person's spouse** and within the scope of the owner's consent.
>
>    Such other **person occupying** a vehicle used to carry **persons** for a charge is not an **insured.**
>
> 5. any **person** entitled to recover damages because of **bodily injury** to an **insured** under 1 through 4 above.

(Emphasis in original). The term "relative" is defined as:

---

1. Plaintiff originally filed a petition for certiorari to review a certified interlocutory order. The Supreme Court issued a show cause order March 17, 2005, directing Plaintiff to explain whether the case could proceed as an appeal from a final order pursuant to 12 O.S.2001 § 994. Thereaf-ter, the trial court entered an order which certified the summary judgment for appeal pursuant to 12 O.S.2001 § 952(B)(3). The trial court's order held § 952(B)(3) was the functional equivalent to certifying the summary judgment for immediate appeal under 12 O.S.2001 § 994.

*Relative*—means a *person* related to *you* or *your spouse* by blood, marriage or adoption who resides primarily with *you.* It includes *your* unmarried and unemancipated child away at school.

(Emphasis in original).

¶ 8 State Farm asserted decedent did not meet the definition of a "relative" under the policy. As support, State Farm attached excerpts from Barker's deposition wherein she testified decedent was married to and resided with her daughter at 7116 N.W. 43rd at the time of his death. Barker stated she lived at 2516 North Terry Avenue, Bethany, Oklahoma, and even though decedent sometimes stayed at her house, she did not consider him to be living primarily with her at the time of his death. State Farm also attached excerpts from Plaintiff's deposition. Plaintiff testified she and decedent both leased the house at 7116 N.W. 43rd, they both considered this house to be their residence, all their belongings were located at this house and decedent was primarily residing at 7116 N.W. 43rd at the time of his death.

¶ 9 The only evidence offered by Plaintiff in opposition to State Farm's motion for summary judgment was her affidavit. Plaintiff averred decedent was living with Barker at the time of his death. Her affidavit claimed she had a fight with decedent the day before his death, that decedent specifically told her he had moved into her mother's house and he was going to move his belongings to Barker's house.

¶ 10 The question this Court must resolve on appeal is whether Plaintiff's affidavit constitutes competent evidence for purposes of demonstrating the existence of a genuine issue of material fact regarding decedent's status as an "insured." We hold it does not. Because Oklahoma's district court rule for disposing of matters by summary judgment, Rule 13, was patterned after Rule 56 of the *Federal Rules of Civil Procedure,* 28 U.S.C.A., "the Federal cases thereunder are given special consideration by the Court." *Kepler v. Strain,* 1978 OK 52, ¶ 7, 579 P.2d 191, 192. We find the law espoused in *Franks v. Nimmo,* 796 F.2d 1230 (10th Cir. 1986), and its progeny both persuasive and dispositive under the facts of this case.

¶ 11 In *Franks,* the plaintiff in a summary judgment proceeding submitted an affidavit which directly contradicted his earlier sworn testimony. The Court first acknowledged "[t]here is authority for the proposition that in determining whether a material issue of fact exists, an affidavit may not be disregarded because it conflicts with the affiant's prior sworn statements." *Id.* at 1237. We note the existence of similar authority under Oklahoma law. *See Bundren v. Car Connection, Inc.,* 1998 OK CIV APP 119, ¶ 9, 963 P.2d 634, 637 (trial court cannot choose to accept previous deposition testimony over apparently conflicting affidavit in deciding summary judgment).

¶ 12 The *Franks* Court continued:

In assessing a conflict under these circumstances, however, courts will disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue. Underlying those decisions is the conclusion that the utility of summary judgment as a procedure for screening out sham fact issues would be greatly undermined if a party could create an issue of fact merely by submitting an affidavit contradicting his own prior testimony.

Factors relevant to the existence of a sham fact issue include whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affiant attempts to explain.

*Franks,* 796 F.2d at 1237 (citations omitted). Applying the above factors, the *Franks* Court concluded the plaintiff's affidavit raised only a sham fact issue. *Id.*

¶ 13 In the present case, Plaintiff's deposition was taken by opposing counsel, which we deem satisfies the "cross-examination" factor set forth above. Because Plaintiff was a participant in the alleged conversation she had with decedent regarding his residence, she "clearly had access to the relevant evidence at" the time of her deposition. *Id.* Furthermore, Plaintiff's affidavit made no

reference to her earlier contrary testimony, and her earlier testimony was unequivocal regarding the location of decedent's primary residence. Applying the *Franks* criteria to the facts of this case, "we must conclude that this is one of those unusual cases in which the conflict between the testimony and the affidavit raises only a sham issue." *Id.*

¶ 14 On the basis of the foregoing, we hold Plaintiff's affidavit did not create a genuine factual dispute regarding the primary residence of the decedent at the time of his death. The trial court's summary judgment—which determined the decedent was not an "insured" under Barker's policies as a matter of law—was properly granted. Accordingly, the trial court's summary judgment is affirmed.

¶ 15 AFFIRMED.

MITCHELL, J., specially concurring:

I would add that the use of a "sham fact" as has been used here, is an attempted fraud upon the Court and should not be tolerated or condoned.

ADAMS, P.J., dissents with separate opinion.

ADAMS, Presiding Judge, Dissenting:

¶ 1 I believe the majority incorrectly applies a Federal approach for summary adjudication despite significant differences between the Federal summary adjudication process and that required in Oklahoma in order to remain consistent with the right to jury trial guaranteed in Article 2, Section 19 of the Oklahoma Constitution. *Kepler v. Strain*, 1978 OK 52, 579 P.2d 191, upon which the majority relies for its conclusion that we should give special consideration to decisions of Federal Courts on summary adjudication, was decided prior to 1986, the year in which the United States Supreme Court significantly altered the legal landscape for summary adjudication process in Federal Courts by adopting a trilogy of cases which gave Federal trial judges an increased degree of discretion in ruling on motions for summary judgment. *See Weldon v. Dunn*, 1998 OK 80, 962 P.2d 1273, (Opala, J., dissenting).

¶ 2 The test adopted by the majority for determining a "sham fact" clearly, although disclaiming any intent to "weigh" the evidence, requires a judge to engage in a process for assessing the "quality" of the evidence when faced with a conflict between deposition testimony and a later-filed affidavit executed by the deponent. In my view, "quality" is just another way of saying "credibility." In the Oklahoma summary adjudication process, the court does not weigh the evidence. *Oliver v. Farmers Insurance Group of Companies*, 1997 OK 71, 941 P.2d 985. This is a task for the jury.

¶ 3 Moreover, I do not think the conflict in this case is so stark as to justify a conclusion that there is an attempt to defraud the court. The critical fact in determining the decedent's residence at.the time he was driving Barker's car was his intent. Most of the questions in Plaintiff's deposition focused on *her* opinion and intent concerning the decedent's living arrangement. Only one question addresses *her* view of where *the decedent considered his residence* to be located.[1] In her affidavit, Plaintiff made a distinction between *her* intent and *the decedent's* intent, noting that she did not intend for him to live at Barker's but also stating that he had told Plaintiff he was doing that.

¶ 4 The very concept of determining whether a fact issue is "genuine" or "sham" suggests a court deciding whether the fact conflict is "fake" or "made up." That determination is nothing more or less than weighing the evidence of the fact and determining its credibility. In considering a motion for summary a judgment, an Oklahoma court faced with a conflict between an affidavit of a witness and the deposition testimony of that witness, may "not resolve the incongruity by choosing to accept one over the other." *Bundren v. Car Connection, Inc.*, 1998 OK CIV APP 119, ¶ 9, 963 P.2d 634, 637. I respectfully, dissent.

---

1. In her deposition, Plaintiff responded, "Yes" to a question from State Farm's attorney, "So you both at the time of his death considered that to be your residence." She also answered, "Yes" when asked if that residence was "7116 N.W. 43rd." That is not Barker's address.