2008 OK CIV APP 20

Leslie **SAVAGE**, Wife and Personal Representative of the Estate of Timothy James Moore, Deceased, and Individually, Plaintiff/Appellee,

v.

David **BURTON**, Defendant,

v.

**State Farm Mutual Automobile Insurance Company, Garnishee/Appellant.**

**No. 104,335.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Feb. 1, 2008.

Michael Gassaway, Oklahoma City, Oklahoma, for Plaintiff/Appellee.

Joseph T. Acquaviva, Frances J. Armstrong, Wilson, Cain & Acquaviva, Oklahoma City, Oklahoma, for Garnishee/Appellant.

KENNETH L. BUETTNER, Presiding Judge.

¶ 1 The underlying facts in this case concerned a road-rage incident in February 2004 in which Plaintiff Leslie Savage (Plaintiff) claimed her deceased husband, Timothy Moore (Moore), was without fault and that his death was due to the negligent and/or willful unlawful acts of Defendant David Burton (Burton) who, among other things, operated his car improperly, and ultimately left his vehicle and shot Moore with a pistol, resulting in Moore's death.

¶ 2 An October 21, 2005 minute order reveals that the case was settled and the jury trial stricken. The next document in the record is a Journal Entry of Judgment, which begins, "Now on this 14 day of November, 2005 the above matter comes on for trial," and awarded Plaintiff $1.2 million in damages. Thereafter, Plaintiff began garnishment proceedings against State Farm, Burton's automobile liability insurer.[1] State Farm responded with a Petition to Vacate Judgment and Motion to Dismiss Garnishment Proceedings. After a hearing, the Trial Court modified the judgment by changing the parts which reflected that testimony or evidence was taken, and replacing with "... stipulations of the parties are presented to the Court." State Farm's Motion to Settle Journal Entry and Motion to Vacate Amended Journal Entry of Judgment was denied. We find the trial court abused its discretion and reverse.

*History of the Case*

¶ 3 Plaintiff filed original and amended petitions alleging Burton "violently and negligently killed Timothy James Moore by shooting him to death," after having an altercation in their cars, stopping, and Burton exiting his car. Plaintiff's Second Amended Petition al-

---

1. Originally, State Farm Automobile Insurance Company was named a defendant, Plaintiff claiming State Farm provided uninsured motorist coverage on the vehicle Moore was driving. State Farm was granted Summary Judgment on the ground that Moore was not an insured under the policy. That judgment was affirmed on a prior appeal and is now final. *See Savage v. Burton,* 2005 OK CIV APP 106, 125/1249, 125 P.3d 1249.

leged Burton negligently killed Moore "by shooting him to death by negligently discharging his weapon."

¶ 4 In State Farm's successful Motion for Summary Judgment filed December 17, 2004, challenging the uninsured motorist coverage allegations against it (see footnote 1) the following were presented as undisputed facts:

1.  Timothy Moore was driving a 1993 Cadillac vehicle which stopped on the roadway on or about February 25, 2004 at approximately 2:00 p.m. on East Highway 9 in Norman, Cleveland County, Oklahoma.

2.  Defendant Burton pulled a gun and shot Mr. Moore, ultimately causing his death.

3.  The 1993 Cadillac was owned by Gwendolyn Barker.

4.  The 1993 Cadillac was insured under State Farm Mutual Automobile Insurance Company policy No. 032–0392–36.[2]

¶ 5 These facts were not disputed in Plaintiff's Response, and were accepted by the trial court and the Court of Civil Appeals.[3]

¶ 6 The case was set for trial October 24, 2005. A Minute Order dated October 21, 2005 reflects that the case was settled and the jury trial stricken.[4]

¶ 7 The next item in the record is a November 14, 2005 Journal Entry of Judgment. It is signed by counsel for Plaintiff and counsel for Burton. It recites that a trial took place November 14, 2005, attended by Plaintiff, and counsel for Plaintiff and Burton. It further states that witnesses testified, and evidence was presented. It then contains findings by the court including:

3.  Defendant David Burton caused bodily injury and ultimately death to Plaintiff's decedent while the defendant was in the course of operation and use of his 1993 Plymouth Voyager van.

4.... The Court further finds that the Plaintiff's decedent was without fault in the premises and **that his injuries and ultimate death were the sole result** of the negligence of the Defendant David Burton, **including but not limited to the following: a) Careless Driving; b) Following too closely; c) Improper lane change; and d) other acts that amount to negligence per se.** (Emphasis added.)[5]

The judgment awarded damages in the amount of $1,200,000.

¶ 8 Plaintiff filed a garnishment action against State Farm April 17, 2006. State Farm filed a Petition to Vacate Judgment and Motion to Dismiss the Garnishment Proceedings. The Petition to Vacate relied on 12 O.S.2001 § 1032(3) (irregularity in obtaining judgment) and (4) (fraud practiced by the successful party, in obtaining a judgment).

¶ 9 A hearing on the Petition to Vacate was held July 14, 2006.[6] The trial court checked her records for November 14, 2005 and found that she had motion dockets in the morning and afternoon, and it was unlikely she conducted a trial. She had no independent recollection of a trial.

¶ 10 Plaintiff's counsel argued that he and Plaintiff appeared before the court and Plaintiff gave testimony. The trial court was concerned that even if that occurred, Plaintiff could not have provided testimonial evidence of the facts surrounding the incident which

2.  Moore was not "the first person named, the spouse or relative ..." with respect to the uninsured motorist coverage and Barker, the owner/insured, had made a written rejection of underinsured motorist coverage.

3.  Paragraph 2 of the appellate opinion states: "Timothy James Moore was driving a 1993 Cadillac owned by his mother-in-law, Gwendolyn Barker, when he was shot to death by Defendant David Burton. * * * Plaintiff specifically alleged Burton accidentally and negligently killed decedent by shooting him to death with a firearm." *Savage*, supra. 125 P.3d at 1250.

4.  Contrary to the statement in Plaintiff's Answer Brief, p. 2, there is no evidence or suggestion that any evidence was taken October 21, 2005.

5.  Under the principle of *ejusdem generis*, the general words of subparagraph d) would be construed as applying only to things of the same general kind or class as subparagraphs a), b), and c). Thus, in a list of improper driving activities, one would not usually interpret the "other acts" of subparagraph d) as including shooting and killing someone.

6.  Neither Burton nor his attorney were present at the July 14, 2006 hearing.

were set forth in the November 14, 2005 Judgment. The court found that what occurred was technically a fraud on the Court, but found it was inadvertent.

¶ 11 The trial court decided that the Judgment should be modified to reflect that stipulations were presented to the court, which the court accepted and incorporated in the judgment.

¶ 12 Plaintiff's attorney prepared a modified judgment, presented it to the trial court for signature (not approved nor signed by any other parties), and filed it July 26, 2006.

¶ 13 State Farm then filed a Motion to Vacate the Amended Journal Entry and Motion to Settle the Journal Entry. A hearing was held December 11, 2006. The trial court vacated the July 26, 2006 Judgment and settled the form of the amended judgment. The Amended Journal Entry was filed January 25, 2007. The court order sustaining in part and overruling in part the Petition to Vacate was filed January 27, 2007.

### Standard of Review

¶ 14 The standard of review of an order granting or denying a petition to vacate under § 1031 is whether the trial court abused its discretion. *Patel v. OMH Medical Center, Inc.,* 1999 OK 33, ¶ 20, 987 P.2d 1185, 1194. "A petition to vacate judgment because of unavoidable casualty or irregularity in obtaining the judgment under section 810, Comp. Stats.1921, [now 12 O.S 2001 § 1031(3) ], is addressed to the sound discretion of the trial court, and this court will set aside order refusing to vacate such judgment when it appears such discretion has been abused." *Boaz v. Martin,* 1924 OK 398, 225 P. 516, Syllabus by the Court, ¶ 3. In *Washington v. Tulsa County,* 2006 OK 92, 151 P.3d 121, the trial court found an irregularity in obtaining a dismissal of Plaintiff's sexual discrimination claim on the ground that at the time Tulsa County removed *Washington I* to federal court, it erroneously asserted that the case was pending in state court. The truth was that the matter had been dismissed and Tulsa County knew it had been dismissed because a copy of the order of dismissal was attached to its petition for removal. The Oklahoma Supreme Court then noted other evidence in the record which supported the irregularity in obtaining the dismissal and held there was no abuse of discretion when the trial court vacated the order dismissing Plaintiff's action. Finally, citing *Patel v. OMH Medical Center, Inc.,* 1999 OK 33, ¶ 20, 987 P.2d 1185, 1194, the *Washington v. Tulsa County* Court stated, at ¶ 10, p. 124: "An abused judicial discretion is manifested when discretion is exercised to an end or purpose not justified by, and clearly against, reason and evidence."

### Decision

¶ 15 It should go without saying that attorneys should only present truthful documents to the court for signing, and that judgments and orders signed by the court should reflect what actually occurred, not what could have, should have, or never could have occurred. We have no hesitancy in holding that the November 14, 2005 and January 25, 2007 judgments resulted from irregularities in obtaining the judgments, and the failure to vacate those judgments constituted an abuse of discretion.

¶ 16 With respect to the November 14, 2005 Judgment, the trial court could not recall a trial and had no independent evidence of a trial. It was also admitted that neither Burton nor his attorney appeared before the court that day. As a result, the judgment did not reflect what actually occurred. Deciding to transform the inaccurate judgment into stipulations of fact also has no basis in the record. The transformation was made without the benefit of Burton's attorney participating in the hearing, contrary to Plaintiff's statement as to what happened, and without any evidence that Burton stipulated to the questioned facts. Plaintiff's attorney argued that he and his client appeared before the court and a trial was held. The trial court correctly observed that Plaintiff could not furnish evidence of the facts that were found in the Judgment. Thus, if there was insufficient evidence before the court to support the Judgment, and Defendant was not before the court, then there is a serious question that the court could transmogrify the November 14, 2005 Judgment into a stipulation. We note that both the November

14, 2005 Judgment and the Amended Judgment, filed January 25, 2007, state that Defendant's attorney was present November 14, 2005. Plaintiff's counsel argued that he brought the Journal Entry to court November 14, 2005, presumably pre-signed by Burton's attorney; the court heard the testimony of Plaintiff, then counsel had the Journal Entry signed by the Court and filed. Even if this occurred, there is no basis for holding Burton's counsel's signature constituted a stipulation of facts-which the original Journal Entry stated were found by the trial court after witnesses and exhibits were presented.[7]

¶ 17 The modified Journal Entry (filed January 27, 2007) was prepared indicating that a stipulation of facts was presented and accepted by the court, based upon the testimony of Plaintiff. Burton's attorney never signed that Journal Entry. There was no admission by Burton's attorney that Burton stipulated to any facts. Based upon the allegations in Plaintiff's petitions, and the evidence that would have been available to Burton's attorney, i.e., police reports, medical records of Moore, and the fact that Burton had been convicted of the First Degree Manslaughter by July 20, 2005, Burton's attorney would have had ethical and practical problems stipulating that Moore was killed "while Defendant was in the course of operation and use of his 1993 Plymouth Voyager van," or that Moore's injuries and death "were the sole result of the negligence of the Defendant David Burton, including but not limited to the following: a) Careless driving; b) Following too closely; c) Improper lane change; and d) other acts that amount to negligence per se." Likewise, Plaintiff could not have testified to these facts. She was not present at the time of the incident; there is no suggestion she had firsthand knowledge of the facts; and they are contrary to the allegations in her petitions. There was also no evidence, and no argument by Plaintiff's counsel, that documentary evidence was presented to the court.

¶ 18 In conclusion, the trial court found that no trial took place, and there was an inadvertent fraud on the court because the judgment did not reflect what occurred. There was no basis to believe Burton stipulated to the questioned facts, and thus no basis for modifying the judgment to reflect something else that did not occur.[8] The November 14, 2005 Judgment should have been vacated under § 1031(3) and (4). The failure to do so, as well as the attempt to modify the irregularly obtained judgment, was an abuse of discretion.

¶ 19 The Order of the trial court filed January 27, 2007 is reversed. This matter is remanded to the trial court with directions to vacate the November 14, 2005 Journal Entry and the Amended Journal Entry filed January 25, 2007.

¶ 20 REVERSED AND REMANDED WITH DIRECTIONS.

MITCHELL, V.C.J., concurs; and BELL, J., concurs in result.

---

7. We question this scenario because even if a settlement agreement called for a judgment to be entered, it could not be entered on the agreement of the parties to pretend a trial occurred, evidence was taken, and the trial court pronounced its findings of fact and conclusions of law.

8. In essence, the modified judgment was a *nunc pro tunc* correction of the November 14, 2005 Judgment. However, "orders *nunc pro tunc* are designed neither to bring into the record what a court *might or should have done* nor what it *might or should have intended to do.* The function of a *nunc pro tunc* entry to amend a judgment to make it *speak the truth about what actually transpired* or *was considered* and *adjudged. Nunc pro tunc* relief is limited to supplying *inadvertent clerical omission* and correcting *facial mistakes* in recording judicial acts that actually took place. In short, a *nunc pro tunc* order *can and will* place of record what was *actually decided* by the court *but was incorrectly recorded.* The device may neither be invoked as a vehicle to review a judgment (or to excise legal errors found in it) nor as a means to enter a different judgment." (Emphasis in original.) *Stork v. Stork,* 1995 OK 61, 898 P.2d 732, 737.