**Thelma FARRAR, Plaintiff in Error,**

**v.**

**Dr. Frank B. WOLFE, Defendant in Error.**

**No. 38650.**

Supreme Court of Oklahoma.

May 10, 1960.

Rehearing Denied and Dissenting
Opinion Filed Dec. 6, 1960.

Application to File Second Petition for
Rehearing Denied Jan. 10, 1961.

F. J. Lucas, Tulsa, for plaintiff in error.

Wheeler & Wheeler, Tulsa, for defendant in error.

JOHNSON, Justice.

This is an appeal from a judgment on the pleadings rendered by the District Court of Tulsa County, Oklahoma, in favor of the defendant, Dr. Frank B. Wolfe.

The record discloses that the plaintiff was a nurse, and that on or about May 6, 1957, while employed at the Osteopathic Hospital, she slipped on a slick floor and fell, from which fall she suffered a broken hip. She filed an action against the hospital for damages on the 26th day of September, 1957. A compromise and settlement of this action was made on May 6, 1958. Thereupon this action was dismissed with prejudice, and she executed a general release to the hospital for the damages that she suffered by reason of the fall on the floor of the hospital.

After the accident Dr. Frank B. Wolfe allegedly undertook to faithfully, skillfully and diligently treat and cure the fractured hip of the plaintiff; that Dr. Wolfe performed two operations upon the plaintiff which were unsuccessful. The plaintiff thereafter employed Dr. N. S. White and Dr. Worth Gross, and they re-operated on the plaintiff's hip at a cost of about $2,500 or more.

On July 8, 1958, Thelma Farrar filed an action in the District Court of Tulsa County, Oklahoma, against Dr. Frank B. Wolfe wherein she alleged damages suffered by her by reason of Dr. Wolfe's unprofessional and negligent treatment of her broken hip. That is, she sought damages against the doctor for his alleged negligent aggravation of her prior injuries (resulting from the fall on the hospital floor) by improper treatment.

Dr. Wolfe answered by general denial and plead the settlement of plaintiff's case against the Oklahoma Osteopathic Hospital and claimed the release executed by plaintiff in the case against the hospital as a bar to the action against him.

In plaintiff's reply she asserted that at the time she settled her case against the hospital she did not release the defendant, Dr. Wolfe, in the case against him.

A copy of the release was attached to Dr. Wolfe's answer and made a part of his pleading and reads as follows:

### "Release of All Claims

"For and in Consideration of the payment to me at this time of the sum of Sixteen Thousand Nine Hundred Eighty Four and 50/100 Dollars ($16,984.50), the receipt of which is hereby acknowledged, I, being of lawful age, do hereby release, acquit and forever discharge Oklahoma Osteopathic Hospital of and from any and all actions, causes of action, claims, demands, damages, costs, loss of services, expenses and compensation, on account of, or in any way growing out of, any and all known and unknown personal injuries and property damage resulting or to result from accident that occurred on or about the 31st day of May, 1957,

at or near Second Floor, 744 West Ninth Street, Tulsa, Oklahoma.

"I hereby declare and represent that the injuries sustained are permanent and progressive and that recovery therefrom is uncertain and indefinite, and in making this release and agreement it is understood and agreed that I rely wholly upon my own judgment, belief and knowledge of the nature, extent and duration of said injuries, and that I have not been influenced to any extent whatever in making this release by any representations or statements regarding said injuries, or regarding any other matters, made by the persons, firms or corporations who are hereby released, or by any person or persons representing him or them, or by any physician or surgeon by him or them employed.

"It is further understood and agreed that this settlement is the compromise of a doubtful and disputed claim, and that the payment is not to be construed as an admission of liability on the part of Oklahoma Osteopathic Hospital, by whom liability is expressly denied.

"This release contains the Entire Agreement between the parties hereto, and the terms of this release are contractual and not a mere recital.

"I further state that I have carefully read the foregoing release and know the contents thereof, and I sign the same as my own free act.

"Witness my hand and seal this 6 day of May, 1958.

"In presence of F. J. Lucas /s/ 603 Ritz Bldg.

Caution! Read Before Signing

"x /s/ Thelma Farrar        (Seal)
       Thelma Farrar        (Seal)"

This was the status of the pleadings upon which the trial court sustained the motion for judgment on the pleadings.

Plaintiff contends that under general principles of tort law the release of the Oklahoma Osteopathic Hospital in con-

sideration of part payment of the amount claimed against the hospital does not bar this malpractice action against Dr. Wolfe, who allegedly was negligent in treating the injuries inflicted by the negligence of the hospital. On the other hand, the defendant, Dr. Wolfe, contends that since a person should not be twice compensated for the same injury and since plaintiff could have recovered compensation for damages resulting from the alleged malpractice in the action against the hospital, the release of the hospital and the satisfaction of all claims against the hospital constitutes a complete defense to plaintiff's subsequent action for malpractice against him.

The theory of the plaintiff comes within what text writers refer to as the "minority rule or view," Annotation 40 A.L.R.2d 1084, while the contention of the defendant is supported by the "general rule," 41 Am.Jur., Physicians and Surgeons, Sec. 137, page 252, or as referred to in Annotation 40 A.L.R.2d 1078, as the "majority view."

So far as we have been able to ascertain from the briefs filed in this case and by our independent research, this is a case of first impression in this jurisdiction; therefore, we must look to other jurisdictions for authorities determinative of the issues involved in the instant case.

The general rule as stated in 41 Am.Jur., Sec. 137, page 252, supra, reads as follows:

"§ 137. Release of Tort-feasor as Bar to Action for Malpractice.—At common law, a settlement by an injured person with the original tort-feasor released the attending physician from liability for an aggravation of the original injury from malpractice. *And it is the general rule that there can be no recovery in a malpractice suit by one who has sustained personal injuries in consequence of a third person's negligence, against a physician for negligent aggravation of such injuries by improper treatment, after a settlement with and full release of the tort-feasor who caused the injuries, especially where the release expressly*

*includes all claims for medical, surgical, and related expenses. As stated elsewhere in this work, an aggravation of injuries resulting from the mistake or negligence of a physician selected by the injured person to treat his injury is regarded as part of the immediate and direct damages flowing from the original injury for which the original tort-feasor is liable. * * * "* (Emphasis ours.)

And in the statement of the "majority view" by the annotator in 41 A.L.R.2d 1078, supra, it was said:

"There are somewhat differing, but closely related theories, as reflected in the case summaries, § 3(b), infra, and as generally discussed in § 2, supra, advanced in support of the position that the release of one responsible for an injury constitutes a bar to action against a physician or surgeon for his negligent treatment of the injury. Apart from particular theories, it is the great weight of authority that a general release executed in favor of one responsible for the plaintiff's original injury, at least if a different intention is not positively revealed by the language of the release, or the circumstances, precludes an action against a physician or surgeon for damages incurred by his negligent treatment of the injury, at least in the absence of a finding that the negligence of the physician or surgeon produced an entirely new injury."

Following this statement of the rule the annotator cited cases from several states, including Colorado, Florida, Georgia, Illinois, Iowa, Kansas, Maine, Massachusetts, Minnesota, Missouri, New Jersey, New York, North Carolina, Ohio, Oregon, Pennsylvania, Texas, Virginia, Washington, West Virginia and Wisconsin.

The same annotator (40 A.L.R.2d 1084) in discussing the "minority view," said:

"A small minority of courts have held that a release by an injured party of the one responsible for the injury

does not of itself, in the absence of language indicative of an intention on the part of the parties, preclude an action by the injured person against a physician or surgeon for negligent treatment of the injury, at least unless there has been full compensation in fact for the plaintiff's total injuries."

The two most recent cases cited in the annotation and applying the minority rule are Ash v. Mortensen, 1944, 24 Cal.2d 654, 150 P.2d 876, and Dickow v. Cookinham, 1954, 123 Cal.App.2d 81, 266 P.2d 63, 40 A.L.R.2d 1066.

Without herein evaluating the relative merits of the majority or minority view, we follow the majority rule.

Judgment affirmed.

DAVISON, C. J. and BLACKBIRD, JACKSON, IRWIN and BERRY, JJ., concur.

WILLIAMS, V. C. J., dissents.

WILLIAMS, Vice Chief Justice (dissenting).

To my way of thinking, the mere fact that the original tort-feasor may become derivatively liable in an increased amount because of the negligence of a physician subsequently treating the injured plaintiff, on account of that negligence being an outgrowth of the original wrong, does not necessarily compel the conclusion that therefore the release of the original tort-feasor should ipso facto operate as a release of such allegedly negligent physician.

I note in the quotation from 41 Am.Jur. in the opinion of the majority the following language:

"* * * especially where the release expressly includes all claims for medical, surgical and related expenses * * *"

From the mere facts that the original tort-feasor involved here was a hospital and present defendant is a physician, it is not to be inferred that such physician was the agent of the hospital. Plaintiff was merely an employee of hospital. After injury,

quite independently of hospital, she employed defendant doctor to treat and operate upon her person.

The release involved herein, by its terms, runs only to the hospital. It does not contain any reference to medical, surgical and related expenses. The omission from the release of such items, together with the fact that the physician was not mentioned, weakens his claim of release. A jury might well infer that the parties did not intend for the physician to be released.

The section from 41 Am.Jur. above referred to further states:

"It has been held, too, that the question of the intent of the parties as to the scope of the release is an issue of fact to be determined, like all such issues, by the weight of competent evidence."

In 40 A.L.R.2d 1077, Release, § 2, it is said:

"The underlying value purported to be served by the general rule is that there should not be double recovery for the same injury."

The defendant physician seeks to substitute a rule of law for the factual defense of double recovery.

The fact that plaintiff could possibly have obtained full compensation from the hospital for all injuries does not establish that she has been so compensated. It would be a matter of proof as to whether she has been fully compensated by the hospital for all injuries.

In Wheat v. Carter, 79 N.H. 150, 106 A. 602, the court said that the injured plaintiff's testimony was admissible even though it contradicted the terms of the release; that the release in and of itself was not a bar to an action against the physician.

In 50 A.L.R. 1110, Release, referring to a Missouri case, the author states:

"The court held that, since the plaintiff had shown no intention in the instrument to release the defendant (physician), the agreements did not operate as a bar to the action."

The courts of Minnesota and New Jersey have changed positions as to this point. They now hold that a release of the original tort-feasor does not necessarily release the physician. A.L.R. Supplement Service, 1960, page 2843, Release.

The California court in Ash v. Mortensen, 24 Cal.2d 654, 150 P.2d 876, held that the release of the original wrongdoer did not release the physician unless the injured person received full compensation for all injuries.

I believe the better rule to be that a release of the original tort-feasor should not necessarily operate to release a physician who has been negligent in subsequent treatment of the person injured unless the parties so intended, or the consideration paid for the release constitutes full compensation for all injuries.

In my opinion, the trial court should have empanelled a jury, and taken testimony as to whether the intention of the parties was that the physician be released and as to whether plaintiff had been fully compensated for her injuries.

For the above reasons, I respectfully dissent.