Marjorie K. SHADDEN and Boyd Shadden, Appellants,

v.

VALLEY VIEW HOSPITAL d/b/a Valley View Regional Hospital, Appellee.

No. 83724.

Supreme Court of Oklahoma.

April 16, 1996.

Rick W. Bisher, Boettcher, Ryan & Martin, Oklahoma City, for Appellants.

A. Scott Johnson, Mary Hanan, Michael J. Heron, Michael D. Denton, Kimberly S. Majors, A. Scott Johnson and Associates, P.C., Oklahoma City, and Bob E. Bennett, Ada, for Appellee.

LAVENDER, Justice.

We hold that a negligence suit brought by patient for personal injuries against a hospital for failing to restrain patient in her bed resulting in injurious fall of patient is not barred by a general release given to original tortfeasor driver allegedly responsible for causing automobile accident that necessitated hospital admission. Under the teachings of *Moss v. City of Oklahoma City,* 897 P.2d 280 (Okla.1995), to the extent the original tortfeasor and hospital share a common liability for patient's injuries, 12 O.S.1991, § 832(H)(1), a part of the Uniform Contribution Among Tortfeasors Act (UCATA) applies, and because the involved release fails to name or otherwise specifically identify hospital as a tortfeasor to be discharged, it is insufficient as a matter of law to discharge hospital from potential liability. Further, to the extent there is no common liability and the hospital is alone responsible for the harm (or some part thereof) resulting from patient's fall, although the UCATA would not apply because of the lack of common liability, the same result would obtain. In such event, an independent and separate cause of action would exist against the hospital for the harm caused by the independent and intervening acts or omissions of the hospital and under no theory would the release at issue be considered a discharge of it. In view of our determinations, we reverse the decision of the trial court granting summary judgment to the hospital and vacate the memorandum opinion of the Court of Appeals.

## PART I: STANDARD OF REVIEW.

 Although a trial court in making a decision on whether summary judgment is appropriate considers factual matters, the ultimate decision turns on purely legal determinations, i.e. whether one party is entitled to judgment as a matter of law because there are no material disputed factual questions. Therefore, as the decision involves purely legal determinations, the appellate standard of review of a trial court's grant of summary judgment is *de novo*. *Bacchus Industries, Inc. v. Arvin Industries, Inc.*, 939 F.2d 887, 891 (10th Cir.1991). We, like the trial court, will examine the pleadings and evidentiary materials submitted by the parties to determine if there is a genuine issue of material fact. *Ross v. City of Shawnee*, 683 P.2d 535, 536 (Okla.1984). Further, all inferences and conclusions to be drawn from the evidentiary materials must be viewed in the light most favorable to the non-moving party. *Id.*

## PART II: FACTS AND PROCEDURAL HISTORY.

Appellant, Marjorie K. Shadden was involved in an automobile accident in February 1990. Her injuries were apparently severe enough that she was admitted to appellee, Valley View Hospital, where she was hospitalized from about February 15, 1990 to March 3, 1990. On February 21, 1990, Marjorie, while still hospitalized, fell and suffered additional injury. The record is inconclusive as to what injuries were suffered either in the automobile accident or from the fall in the hospital, i.e. the extent of any such injuries or what part(s) of her body were injured is simply not conclusively shown by this record. Although severe injury to the head as a result of the automobile accident is noted in the trial court petition filed against Valley View, Marjorie's husband, Boyd Shadden, described in his deposition the injuries sustained in the hospital fall as the reopening of a wound to the head, damage to skin tissues, and generally neck, head, face and back problems.

In late March 1990, Marjorie and her husband Boyd settled with the original alleged tortfeasor driver, a George E. Jones, in exchange for fifteen thousand five hundred forty-nine dollars and seventeen cents ($15,-549.17). She and Boyd signed a release which specifically named George E. Jones as the person to be discharged—Jones' name being placed in a blank space provided on the release form for such purpose. However, immediately subsequent to naming Jones (his successors, assigns, heirs, executors or administrators) as the discharged party, the release contained the following broad language purportedly also discharging:

> any and all other persons, associations and corporations, whether herein named or referred to or not, and who, together with the above named, may be jointly or severally liable to the Undersigned, of and from any and all, all manner of, actions and causes of action, rights, suits, covenants, contracts, agreements, judgments, claims and demands whatsoever in law or equity, including claims for contribution, arising from and by reason of any and all KNOWN AND UNKNOWN, FORESEEN AND UNFORESEEN bodily and personal injuries or death, damage to property, and all consequences thereof, which heretofore have been, and which hereafter may be sustained by the Undersigned or by any and all other persons, associations and corporations, whether herein named or referred to or not, and especially from all liability arising out of an occurrence that happened on or about the 15th day of February, 1990 at or near Ada, Oklahoma.

Within three months after signing the release Marjorie and her husband filed suit against Valley View claiming injury resulting from her fall in the hospital.[1] The petition claimed Valley View was negligent by providing inadequate care in the following particu-

---

1. Boyd made claim for loss of consortium. The trial court petition also contained a claim based on fraud and deceit. The fraud is claimed to have occurred by Valley View's listing certain medical expenses in lien materials filed with a county clerk's office as being incurred for injuries received in the automobile accident, rather than in the fall in the hospital, when Valley View, in fact, knew such expenses were incurred as a result of the hospital's own negligent acts or omissions. Punitive damages were also requested in the petition.

lars: that because of the head injuries suffered in the automobile accident Marjorie was in a confused state, requiring that she be restrained in her bed. On February 21, 1990 she was not properly restrained, she became ambulatory, she fell to the ground striking her head, thereby incurring injuries to her person. As far as we can tell from materials in the record, the contention is hospital personnel—apparently nurses—had a duty to properly restrain Marjorie in her bed and that this duty was breached.

Valley View moved for summary judgment setting up the release as a discharge of all potential tortfeasors that might be liable for damages associated with or resulting from the automobile accident.[2] It relied not only on the broad, seemingly all-inclusive language of the release, but on the doctrine the release or discharge of an original tortfeasor from liability will also discharge a physician or hospital that allegedly negligently aggravates the initial injuries. Valley View contended such was the law in Oklahoma both prior and subsequent to adoption of the UCATA. The hospital also seemed to assume that it was a given that no matter what the circumstances surrounding Marjorie's fall at the hospital or what harm was caused thereby, the original tortfeasor driver would be liable therefore, i.e. a common liability exists among the driver and Valley View in relation to any harm suffered in the fall at the hospital.

The Shaddens opposed summary judgment arguing in part that under § 832(H)(1) the release was not sufficient to discharge Valley View. They also generally contended there was no intention to release the hospital, but only the original tortfeasor driver. The trial judge granted summary judgment in favor of Valley View based on the broad language contained in the release. The transcript of argument on Valley View's summary judg-

ment motion also shows the trial judge relied on the pre-UCATA case of *Farrar v. Wolfe*, 357 P.2d 1005 (Okla.1960), which held there cannot be recovery in a malpractice suit by one who has sustained personal injuries in consequence of a third person's negligence, against a physician for negligent aggravation of such injuries by improper treatment, after settlement with full release of the tortfeasor who caused the injuries. The Court of Appeals reversed ostensibly on the basis there was no evidence suggesting the Shaddens intended to release Valley View. They also expressly found that § 832(H)(1) was inapplicable because that provision applied only to a situation involving "joint" tortfeasors, not one involving successive tortfeasors, as involved here. The Court of Appeals failed to mention or distinguish *Farrar*. We previously granted certiorari.

**PART III: WHEN A COMMON LIABILITY EXISTS AMONG MULTIPLE TORTFEASORS § 832(H)(1) OF THE UCATA APPLIES.**

 Under our law the general rule is that an original tortfeasor, negligently causing injury to a third person, is liable for the negligence of a physician who treats the injured person where negligent treatment results in aggravation of or increasing the injuries, so long as the injured person exercises good faith in the choice of physicians. *Atherton v. Devine*, 602 P.2d 634, 636 (Okla.1979); *Smith v. Missouri, K. & T. Ry. Co.*, 76 Okla. 303, 185 P. 70, 73–74 (1918). This rule is founded on sound reasons of public policy and is merely a particular application of the rule that a tortfeasor whose negligence causes injury is also liable for any subsequent injury or reinjury that is the proximate result of the original wrongdoing, except where the subsequent injury or reinjury is caused by either the negligence of the in-

2. Valley View also raised below an alternative reason in support of its summary judgment motion. It claimed the Shaddens were required to have, but did not have and failed to present any, expert testimony to support a claim for medical malpractice, particularly in regard to whether Valley View breached any standard of care in its treatment of Marjorie or whether the hospital's actions proximately caused her injuries. In her May 16, 1994 Journal Entry of Judgment the trial judge expressly reserved (i.e. she declined to decide) any issue raised by Valley View's motion for summary judgment other than that based on the written release given to George E. Jones. The Court of Appeals also did not address this alternative issue and we decline to rule on the matter in the first instance at this level. It is an issue that first should be addressed by the trial court if it is re-urged on remand.

jured person, or the independent or intervening act of a third person. *Atherton, supra,* 602 P.2d at 636–637.[3] In that injuries suffered as a result of the medical treatment were considered to have been proximately caused by the original tort, in this sense, the physician and original wrongdoer caused a "single" injury, and were, therefore, jointly liable to the victim. *Summey v. Lacy,* 42 Colo.App. 1, 588 P.2d 892, 893 (1978). This is so even though the physician can be said to be a successive tortfeasor, rather than a joint or concurrent one. *Radford–Shelton, Etc. v. St. Francis Hospital, Inc.,* 569 P.2d 506, 509–510 (Okla.Ct.App., Div. 1, 1976); *See also Fieser v. St. Francis Hospital and School Of Nursing, Inc.,* 212 Kan. 35, 510 P.2d 145 (1973) (recognizing that doctors and hospitals treating tort victim for injuries caused by original wrongdoer are successive tortfeasors).

Prior to adoption of the UCATA we held in *Farrar v. Wolfe, supra,* there could be no recovery in a malpractice suit by one who has sustained personal injuries in consequence of a third person's negligence, against a physician for aggravation of such injuries by improper treatment after a settlement with full release of the tortfeasor who caused the injuries. 357 P.2d at 1006, *First Syllabus.* Of course, the reasoning behind the rule was that the original tortfeasor was liable for additional bodily harm resulting from efforts of third persons to render aid to the injured party and, therefore, to allow recovery from both original tortfeasor and

physician would permit double recovery. *Birmingham v. Berryhill,* 557 P.2d 910, 911 (Okla.1976). The *Farrar* rule was consistent with and a special application of the general common law principle that the release of one tortfeasor liable to a plaintiff ordinarily releases other tortfeasors jointly liable [*Summey v. Lacy,* 588 P.2d at 893], which we held in *Moss v. City of Oklahoma City, supra,* the UCATA was intended to abrogate. 897 P.2d at 283–287.

In 1980 the Oklahoma Legislature amended the UCATA by adding subsection (H)(1) and (2) to § 832. As pertinent here subsection (H)(1) concerns when a release or similar document will discharge from liability tortfeasors who are not parties to the release. Subsection 832(H)(1) and (2) provide *in toto* as follows:

H. When a release, covenant not to sue or a similar agreement is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:

1. It does not discharge any of the other tort-feasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and

2. It discharges the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor.[4]

---

3. *Atherton v. Devine,* 602 P.2d 634 (Okla.1979), itself did not involve injuries caused by the subsequent treatment of a physician, but the question answered there was whether the original wrongdoer could be held liable for additional injuries suffered when, after an initial automobile accident, a second accident occurred when the victim was being transported by ambulance to a hospital. We held the original wrongdoer could be held liable and in so doing we recognized no material distinction between medical treatment required because of a tortious act, and transportation required to reach an institution where medical treatment is available. *Id.* at 636–637. Further, as we discuss in **PART IV,** *infra,* our law that an original tortfeasor causing initial injury is liable for harm suffered at the hands of a physician providing treatment for the injury is consistent with the RESTATEMENT (SECOND) OF TORTS § 457 (1965), which provides:

If the negligent actor is liable for another's bodily injury, he is also subject to liability for any additional bodily harm resulting from normal efforts of third persons in rendering aid which the other's injury reasonably requires, irrespective of whether such acts are done in a proper or negligent manner.

We, thus, note that generally we also see no distinction between medical treatment provided by a physician and that provided by hospital personnel (e.g. nurses) in regard to whether an original tortfeasor might be potentially liable for harm caused by hospital personnel negligence in the course of coming to the aid of a person initially suffering injury by the wrongdoing of the original tortfeasor.

4. Section 832(H)(1) was amended in 1995 in pertinent part to read, "[i]t does not discharge any other tort-feasor from liability for the injury

The United States Court of Appeals for the Tenth Circuit recognized in *In re Jones,* 804 F.2d 1133, 1142–1143 (10th Cir.1986), that § 832(H) did not require that parties act in concert to be applicable, but merely that multiple tortfeasors cause or contribute to the same injury sustained by the plaintiff. The applicability of § 832(H), thus, turns on whether there is a common liability to the plaintiff among the tortfeasors [*See Price v. Southwestern Bell Telephone Co.,* 812 P.2d 1355, 1358–1359 (Okla.1991)], i.e. in the words of § 832(H), "two or more persons [are] liable in tort for the same injury or the same wrongful death". Thus, if the original tortfeasor driver here was liable to the Shaddens for some or all of the aggravated or additional injuries (assuming as true there were some) resulting from Marjorie's fall allegedly caused by Valley View's negligence in failing to properly restrain her during her hospital stay under the doctrine espoused in *Atherton v. Devine, supra* and *Smith v. Missouri, K. & T. Ry. Co., supra,* that an original tortfeasor, negligently causing injury to a third person, is liable for the negligence of a physician or other health care provider who treats the injured person where negligent treatment results in aggravation of or increasing the injuries, to that extent the UCATA would apply because a common liability would exist among the original tortfeasor driver and Valley View.

As is obvious, *Farrar v. Wolfe, supra,* a decision that predated passage of § 832(H) of the UCATA by approximately twenty (20) years, has accordingly been overruled by that Act.[5] The very purpose behind the

Farrar rule—to prevent double recovery [*Birmingham v. Berryhill, supra,* 557 P.2d at 911]—is no longer applicable after passage of § 832(H) because to the extent the original tortfeasor is liable for the malpractice of the physician or negligence of another health care provider, a common liability exists and assuming the settlement proceeds (or some portion thereof) represent payment for such common liability, § 832(H)(1) would mandate some deduction from any recovery against the health care provider, here the hospital.[6]

■ In *Moss v. City of Oklahoma City, supra,* we held that in order to comply with the dictates of § 832(H)(1) a release given to a tortfeasor liable to an injured party will discharge other tortfeasors potentially liable for the same injury or wrongful death only if these other potential tortfeasors are named or otherwise specifically identified in the release. 897 P.2d at 282. The release at issue in this case, although not identical to the ones involved in *Moss,* is similar. It contains language releasing a specifically named person (and his successors, heirs, etc.), followed by broad boilerplate language releasing all others from any and all claims arising out of the occurrence (i.e. the automobile accident) of February 15, 1990. Valley View is not named or otherwise specifically identified in the release. Thus, if § 832(H)(1) is applicable here because under *Atherton v. Devine, supra* and *Smith v. Missouri, K. & T. Ry. Co., supra,* the original tortfeasor driver, under any factual scenario, is liable along with Valley View for part or all of the harm

---

or wrongful death unless the other tort-feasor is specifically named...." See 12 O.S.Supp.1995, § 832(H)(1). As can be seen, the phrase following the word unless was changed from "its terms so provide" to "the other tort-feasor is specifically named".

5. We are not the first court to recognize that the UCATA has overruled the doctrine that the release of an original tortfeasor operates as a discharge of the treating physician. *See e.g. Summey v. Lacy,* 42 Colo.App. 1, 588 P.2d 892, 893–894 (1978), where the Colorado Court of Appeals recognized this import of the UCATA.

6. We note that even assuming a common liability exists among the original tortfeasor driver and Valley View for any negligent care which resulted in Marjorie's fall while in the hospital, to the

extent a rational division can be made between the original injuries and the enhancement thereof, the original tortfeasor driver alone would be liable for the original injuries suffered in the automobile accident. In other words, although the original tortfeasor might be liable for the entire harm, the health care provider who negligently aggravates or enhances the initial injuries, is only liable for the additional harm caused by the negligent treatment. *Lujan v. Healthsouth Rehabilitation Corp.,* 120 N.M. 422, 902 P.2d 1025, 1030 (1995). We are not asked to decide here any issue(s) concerning possible deduction of the original tortfeasor driver settlement from any judgment that might eventually be obtained against Valley View and, therefore, we do not decide any such issue(s) here.

caused by the purported negligent care resulting in Marjorie's fall, *Moss* controls and would lead to the conclusion the release is insufficient to discharge Valley View.[7]

## PART IV: EVEN IF NO COMMON LIABILITY EXISTS, ALTHOUGH § 832(H)(1) OF THE UCATA WOULD NOT APPLY, THE RELEASE WOULD STILL NOT DISCHARGE VALLEY VIEW.

Our law that an original tortfeasor causing initial injury is liable for harm suffered at the hands of a physician providing treatment for the injury is consistent with the RESTATEMENT (SECOND) OF TORTS § 457 (1965). *Atherton v. Devine, supra,* 602 P.2d at 636 n. 1, in fact, quoted § 457 which provides:

> If the negligent actor is liable for another's bodily injury, he is also subject to liability for any additional bodily harm resulting from normal efforts of third persons in rendering aid which the other's injury reasonably requires, irrespective of whether such acts are done in a proper or negligent manner.

As noted in **PART III** the rule as to a physician is merely a particular application of the rule that a tortfeasor whose negligence causes injury is also liable for any subsequent injury or reinjury that is the proximate result of the original wrongdoing, except where the subsequent injury or reinjury is caused by either the negligence of the injured person, or the independent or intervening act of a third person. *Atherton, supra,* 602 P.2d at 636–637.

*Atherton, supra,* 602 P.2d at 637, in discussing proximate cause and reasonable foreseeability in the context of whether an original tortfeasor is liable for subsequent harm brought on by those coming to the aid of an injured person, recognized the issue will many times involve questions of fact for the jury's consideration. This is so because:

> Causation traditionally lies in the realm of fact, not law. In an action for injuries caused by the defendant's negligence, it is a jury question whether the injurious consequences resulting from the negligence could have reasonably been foreseen or anticipated. Likewise, where the evidence is conflicting or where reasonable men might draw different conclusions, the question of reasonable foreseeability of an intervening act or agency causing subsequent injury is to be determined by the jury. Foreseeableness becomes a question of law for the court only when one reasonable conclusion can be drawn from the facts. (footnotes omitted)

*Id.*

■ Assuming, without deciding, that under some factual scenario, the original tortfeasor driver would not be liable along with Valley View for some or all of the injuries suffered as a result of Marjorie's fall in the hospital because of the concept of independent or intervening causation, and, instead, the hospital is alone liable for some or all of said harm, even though § 832(H)(1) of the UCATA would not apply because of the lack of common liability, the same result would obtain as to answering the question of whether the release involved in this case would be considered a discharge of Valley View or act as a bar to the instant litigation against it. In such event, an independent and separate cause of action would exist against Valley View for the harm caused by the independent and intervening acts or omissions and under no theory would the release at issue be considered a discharge of the hospital. Such injuries or harm could no longer be viewed as

---

7. The discussion of the parties in relation to the relevance of whether or not the Shaddens had the advice of an attorney before signing the release is worth some comment. Whether the Shaddens did or did not have the advice of an attorney before executing the release is not relevant under our interpretation of § 832(H)(1) in *Moss v. City of Oklahoma City,* 897 P.2d 280 (Okla.1995). *Moss* did not turn on whether a releasor had the advice of counsel prior to signing a release discharging named alleged tortfeasors, followed by broad boilerplate language seemingly releasing all other persons that might also be liable for the same injury or wrongful death. Our decision in *Moss* turned on our interpretation of the UCATA and the purpose behind § 832(H)(1), i.e. abrogating the common law rule that the release of one tortfeasor released all others jointly liable. 897 P.2d at 286–287. We decline to carve out some exception to the UCATA for releases where the releasor had a lawyer, without any hint in the language of the UCATA that such an exception was intended by the Legislature.

proximately caused by the wrongdoing of the original tortfeasor driver and no longer could be said to arise out of the automobile accident involving Marjorie and George E. Jones. In that Valley View does not argue, and we do not believe, any language in the release could reasonably be construed to have as its intent the discharge of Valley View in such a situation, any potential that common liability does not exist as to all harm caused by Valley View's purported negligence provides no obstacle to reversal of the trial court's grant of summary judgment in favor of Valley View, notwithstanding the inapplicability of § 832(H)(1) of the UCATA where common liability is lacking.

## CONCLUSION

To the extent Valley View is liable with the original tortfeasor driver for the same injuries, i.e. there is some shared common liability for harm caused by Marjorie's hospital fall, § 832(H)(1) of the UCATA as interpreted in *Moss v. Oklahoma City, supra,* applies to the question of whether the release at issue will discharge not only the driver, but also Valley View. In that the release fails to name or otherwise specifically identify Valley View as a tortfeasor to be discharged, but instead names only the original tortfeasor driver, George E. Jones, followed by broad boilerplate language seemingly releasing the entire world from any and all claims arising out of the initial injury-producing accident, the release is insufficient to discharge Valley View from potential liability. *Farrar v. Wolfe, supra,* a decision holding otherwise, predated § 832(H) by approximately twenty (20) years and it has been overruled by that statutory provision.

Further, assuming no common liability exists among the original tortfeasor driver and Valley View for some or all of the injuries or harm resulting from Marjorie's hospital fall and the hospital is alone liable for some or all of said harm based on the view Valley View's misconduct rose to the level of independent or intervening acts sufficient to cut off the liability of the driver for the hospital's harm-causing negligence, although the UCATA would not apply to such extent because of the lack of common liability, the same result would obtain under the release at issue in this case. In such event, an independent and separate cause of action would exist against Valley View for the harm caused by its independent and intervening acts or omissions and under no reasonable interpretation could the release here be considered a discharge of Valley View because the harm it would have caused could not then be said to arise out of the original automobile accident which necessitated medical treatment and Marjorie's hospital stay. It was, therefore, improper for the trial court to grant summary judgment in favor of Valley View whether or not § 832(H)(1) of the UCATA was applicable to the release signed by the Shaddens.

Accordingly, the Court of Appeals' opinion is **VACATED** and the judgment of the trial court granting summary judgment in favor of appellee is **REVERSED** and this matter is **REMANDED** to the trial court for further proceedings.

All Justices concur.