Frederick J. HOYT, as Administrator of
the Estate of Heather Elizabeth
Ryan, Deceased, Appellant,

v.

PAUL R. MILLER, M.D., INC., Paul R.
Miller, M.D.; R.C. Dimski, M.D.; Mid–
Del Family Physicians; ·Concepts of
Care, Inc.; and Concepts of Care III,
Inc., Appellees.

No. 80864.

Supreme Court of Oklahoma.

July 16, 1996.

Ralston, Buck & Associates, Oklahoma City, and Rex K. Travis, Margaret E. Travis, Oklahoma City, for Appellant.

John M. Perry III, Gary A. Rife, Hilton H. Walters, Perry & Rife, Oklahoma City, for Appellees Paul R. Miller, M.D., Inc.; Paul R. Miller, M.D.; and R.C. Dimski, M.D.

Robert T. Goolsby, Oklahoma City, for Appellees Concepts of Care, Inc. and Concepts of Care III, Inc.

LAVENDER, Justice.

We decide if the trial court erred in granting summary judgment to appellees, Paul R. Miller, M.D., Inc., Dr. Paul R. Miller, Dr. R.C. Dimski, Concepts of Care, Inc. and Concepts of Care III, Inc. in a wrongful death suit brought by appellant, Frederick J. Hoyt, administrator of the estate of Heather Elizabeth Ryan (decedent or Ryan).[1] Summary judgment was granted on the basis two releases and satisfactions of judgment filed in a prior case brought by appellant against the driver of the automobile in which decedent was riding when initially injured in an accident and an insurance company, barred any lawsuit against appellees. We hold the grant of summary judgment was error.

## PART I: STANDARD OF REVIEW.

The appellate standard of review concerning a grant of summary judgment

---

1. Mid–Del Family Physicians was also a defendant in the trial court. Appellant filed in the trial court a dismissal without prejudice as to Mid–Del in December 1992.

was stated in *Carmichael v. Beller*, 914 P.2d 1051 (Okla.1996), as follows:

> Although a trial court in making a decision on whether summary judgment is appropriate considers factual matters, the ultimate decision turns on purely legal determinations, i.e. whether one party is entitled to judgment as a matter of law because there are no material disputed factual questions. Therefore, as the decision involves purely legal determinations, the appellate standard of review of a trial court's grant of summary judgment is *de novo*. *Bacchus Industries, Inc. v. Arvin Industries, Inc.*, 939 F.2d 887, 891 (10th Cir.1991). We, like the trial court, will examine the pleadings and evidentiary materials submitted by the parties to determine if there is a genuine issue of material fact. *Ross v. City of Shawnee*, 683 P.2d 535, 536 (Okla.1984). Further, all inferences and conclusions to be drawn from the evidentiary materials must be viewed in the light most favorable to the non-moving party. *Id.*

*Id.* at 1053; *See also Shadden v. Valley View Hospital,* 915 P.2d 364, 366 (Okla. 1996)(same).

## PART II: FACTS AND PROCEDURAL HISTORY.

Decedent was initially injured in an automobile accident while a passenger in a vehicle driven by Michelle Diann Williams. Ryan was apparently treated by appellees. She died about a month after the accident.[2]

Prior to filing this lawsuit against appellees, appellant sued Williams for the injuries and death of decedent. Ten thousand dollars ($10,000.00) and costs were requested against Williams. In the same suit State Farm Mutual Automobile Insurance Company was sued as the uninsured/underinsured insurance carrier under a policy issued to one Bobbi J. Ryan, said policy alleged in the petition in the prior case to provide coverage in the amount of $10,000.00 for decedent's death.[3] On the same day the previous lawsuit was filed separate releases and satisfactions of judgment in favor of Williams and State Farm were also filed.[4] They were signed by appellant and his attorney. We have not been provided copies of any judgment(s) in the prior case, but the releases and satisfactions of judgment show appellant acknowledged receipt of $10,000.00 from each defendant in full payment and satisfaction of judgment rendered. We also note the release and satisfaction of judgment running in favor of Williams expressly recites it reserves the right to sue for medical malpractice.

Subsequent to the conclusion of the prior case against Williams and State Farm, appellant sued appellees for wrongful death based

---

2. Appellees stated in their brief in support of motion to dismiss, or in the alternative, for summary judgment, filed in the trial court that Ryan died at the home of her grandparents from a pulmonary embolus. A pulmonary embolus is apparently some type of obstruction (possibly an air bubble) in a blood vessel serving the lungs. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 542 and 1386 (28th ed.1994).

3. The record does not reveal the relationship between Bobbi J. Ryan and decedent. We assume Bobbi is a relative of decedent. We also note, at least some of the parties to this appeal appear to be under the impression State Farm Mutual Automobile Insurance Company, a defendant in the prior case noted in the text, was the liability carrier for Williams. We find nothing in the record to support such a view. The petition in the earlier case, attached to the brief in support of the dismissal motion or, alternative motion for summary judgment of appellees, Miller, M.D., Inc. and Drs. Miller and Dimski, clearly

alleges State Farm was sued as an uninsured/underinsured carrier and that Williams was underinsured.

4. The copy of the release and satisfaction of judgment in favor of State Farm contained in the original record submitted to us for this appeal, and which was attached to the brief in support of motion to dismiss, or in the alternative, for summary judgment of Miller, M.D., Inc. and Drs. Miller and Dimski, is of poor quality in regard to showing a district court file stamp date. The date is so obscured we cannot verify this release and satisfaction of judgment was filed the same day as the petition in the prior case brought against Williams and State Farm. However, appellees so alleged in their submissions to the trial court supporting their alternative motions to dismiss and for summary judgment, and no party to this appeal disputes that the petition in the earlier case and the two releases and satisfactions of judgment were filed on the same day.

on medical negligence. The petition requested damages under Oklahoma's wrongful death statute, 12 O.S.1991, § 1053. Appellees filed motions to dismiss or, alternatively, for summary judgment, arguing the two releases and satisfactions of judgment barred the suit against them and/or discharged them from liability.[5] The motion to dismiss was filed pursuant to 12 O.S.1991, § 2012(B)(1) based on the view the trial court lacked jurisdiction over the subject matter. Submitted to the trial court in support of the alternative motion were the petition in the earlier case against Williams and State Farm and the two releases and satisfactions of judgment. No judgment from the earlier case was submitted and, as noted before, no judgment from the prior case appears in this record. Although the motion was couched in the alternative, i.e. for dismissal or summary judgment, both requests were grounded on the discharge or bar effect of the two releases and satisfactions of judgment.[6]

Appellant responded to the motions essentially by conceding current Oklahoma law supported appellees' position, but that said law should be overruled, and that upon an adverse decision by the trial court based on the current state of the law, he would appeal the matter to this Court in an attempt to reverse this prior law. The response also essentially indicated the judgment in the Williams/State Farm case was entered based on a settlement and that said earlier case was a so-called friendly suit.

Finding no material, disputed issues of fact, the trial court granted summary judgment in favor of appellees based on the view the filing of the releases and satisfactions of judgment in the earlier case against Williams and State Farm barred the wrongful death action against them as a matter of law. On appeal, the Court of Appeals affirmed. Appellant sought certiorari which we have previously granted.

## PART III.  ANALYSIS.

Before beginning our legal analysis, attention must be drawn to certain matters. First, as stated in **Part I**, we must, like the trial court, take all inferences and conclusions to be drawn from the evidentiary material in the light most favorable to appellant. Doing so, it is our view, the record presented by appellees to support their trial court motions is inconclusive as to whether the prior case against Williams and State Farm truly

---

5. An initial motion to dismiss or for summary judgment was filed by appellees Miller, M.D., Inc., and Drs. Miller and Dimski. After their motion for summary judgment was granted, appellees, Concepts of Care, Inc. and Concepts of Care III, Inc., filed a similar motion and adopted *in toto* the earlier supporting brief filed by Miller, M.D., Inc., and Drs. Miller and Dimski.

6. In addition to the petition in the earlier case and the two releases and satisfactions of judgment, the following documents were submitted by appellees to support their motions: copies of certain documents from the estate case of Heather Elizabeth Ryan (petition for letters of administration, appointment of personal representative and determination of heirship; order appointing personal representative and determination of heirship; and letters of administration), a petition from another case brought by appellant against Williams concerning the accident and death of Ryan, and, finally, a petition in yet another case concerning Ryan's death, this one brought by Ryan's parents against these same appellees. As can be seen, the record, thus, appears to show the suit against Williams and State Farm was in actuality one of three prior lawsuits filed in regard to the auto accident and death of decedent. Although the record does not contain documentation from these other prior cases to show it, apparently both of these other

lawsuits were terminated without any judgment being entered in them—presumably they were both dismissed without prejudice at the instance of the plaintiff(s) therein (appellees so stated in their alternative dismissal/summary judgment motion brief in regard to the earlier case filed against them). In any event, although these other documents were attached to appellees' trial court submissions, we do not read their arguments on appeal to rely on any occurrence or document associated with these two other lawsuits (or the estate case) to directly support their claim of discharge from potential liability or bar of the present lawsuit against them, except possibly to show that appellant and those individuals entitled to beneficially share in any damage award associated with the death of Heather Elizabeth Ryan (apparently her mother and father) had knowledge of the alleged malpractice or medical negligence of appellees at the time of the suit filed against Williams and State Farm. We note that we assume for the purposes of our decision herein appellant (and the mother and father) did have such knowledge at the time of the suit filed against Williams and State Farm, and, thus, we also assume at the time of filing of the releases and satisfactions of judgment therein.

involved actual adjudication on the merits by judge or jury of the issue of the amount of damages recoverable for the death of Ryan.[7] As we noted in **Part II**, we have not been provided with a copy of any judgment(s) in the earlier case, but only the petition and the two releases and satisfactions of judgment—documents the parties do not dispute appear to show were all filed on the same day. We also note one of the releases and satisfactions (the one running in favor of Williams) expressly recites the right to sue for malpractice is reserved and the other (the one running in favor of State Farm), when read in conjunction with the petition in the earlier case, appears to reflect the $10,000.00 acknowledged to have been paid by State Farm was in the exact limit of an uninsured/under-insured automobile insurance policy covering Ryan. In our opinion, without some additional documentation from the earlier case, or other appropriate evidentiary materials, the record here is insufficient to show actual adjudication of the damage issue. In fact, the materials, at a minimum, seem to point to a conclusion, or at least support an inference, appellant correctly stated the situation in his response to the dismissal/summary judgment motions, to the effect the prior case proceeded as a friendly suit based on a settlement.

Further, no conclusive evidence in this record shows the parties to the previous case intended for the amounts reflected in the two releases and satisfactions of judgment to act as full compensation for Ryan's death. Although the language in the releases is fairly broad as to acknowledging full payment and satisfaction for any claim raised in the prior suit brought against Williams and State Farm to recompense for Ryan's death, the statement in the Williams' release and satisfaction concerning reservation of the right to sue for malpractice, coupled with the assumption all pertinent documents were filed on the same day—and, thus, should all be construed together—precludes any conclusive determination the parties to the earlier case intended the $20,000.00 to reflect, or act as, full compensation for the death. At least, an ambiguity is created by the reservation language in the Williams' release and satisfaction as to the parties' intent in such regard. With these matters noted we move to our legal analysis.

The doctrine relied on by appellees to support a discharge or a bar to suit against them is the one satisfaction rule that we recently revisited in the case of *Kirkpatrick v. Chrysler Corp.*, 920 P.2d 122 (Okla.1996). Stated generally this rule is: "[w]here liability is joint and several, the injured party may institute several suits against the multiple tortfeasors, but satisfaction of a judgment against one of the tortfeasors bars a judgment against the other tortfeasors." *Brigance v. Velvet Dove Restaurant*, 756 P.2d 1232, 1234 (Okla.1988). The rationale behind the rule is that:

> [W]hen a plaintiff suffers a single-indivisible injury at the hands of two or more tortfeasors, each being liable for the whole injury—only one cause of action exists and once judgment is entered and satisfaction of that judgment is made by payment of it in full, the cause of action is extinguished and to allow a plaintiff to proceed further against other potentially liable tortfeasors would sanction an impermissible splitting of the cause of action. *Sykes v. Wright*, [201 Okla. 346, 205 P.2d 1156, 1159 (1949)]. It has also been understood that the one satisfaction rule is equitable in nature and its central purpose is to prevent a plaintiff from gaining double recovery, i.e. it is ultimately to prevent unjust enrichment. W. PROSSER, HANDBOOK OF THE

---

7. As we read the trial court submissions of the appellees in support of their alternative motions to dismiss or for summary judgment it is our view appellees really never argued the prior case involved an actual adjudication on the merits of the damage issue. In essence, they relied on previous case law (which will be discussed shortly in the text), at least some of which had indicated that a release and satisfaction of judgment, even if merely a reflection of or a part of a compromise and settlement with one of two or more potential tortfeasors never intended to reflect full compensation or to act as a discharge of non-settling tortfeasors, would act as a discharge in any event as a matter of law. To the extent it might be argued appellees did contend the issue of the amount of damages was the subject of actual adjudication on the merits by either judge or jury, as we note in the text, the reviewable evidentiary material in the record is not conclusive on the point.

LAW OF TORTS, Ch. 8, § 48, at 299 (4th ed.1971); *See also Milicevich v. Sacramento Medical Center*, 202 Cal.Rptr. 484, 155 Cal.App.3d 997, 1002–1003 (1984)(recognition that one or single satisfaction rule is designed to prevent double recovery); *Garner v. Wyeth Laboratories, Inc.*, 585 F.Supp. 189 (D.C.S.Car.1984)(plaintiff entitled to one compensation for his loss).

*Kirkpatrick, supra,* 920 P.2d at 127.

We also recognized in *Kirkpatrick* the following:

In applying the rule it has not appeared to matter to this Court whether there was an actual adjudication on the merits of the issue of the amount of damages by judge or jury, or whether the judgment entered was the result of a compromise and settlement. In other words, we have applied the rule even to an agreed or consent judgment, never intended by plaintiff, the tortfeasor settled with or the trial judge, to act as a reflection of full compensation for the plaintiff's injuries. Also determined by this Court to be immaterial was the fact it was, in essence, recited in the agreed or consent judgment that further proceedings against other tortfeasors were being reserved, i.e. an obvious declaration other potential tortfeasors were not to be considered discharged.... In other words, our cases have applied the one satisfaction rule quite mechanically in all those situations where judgment was actually entered against one party and in favor of another, ignoring the fact, or evidence that would lead one to conclude, the judgment was in reality merely meant to memorialize or be a part of a compromise and settlement—as long as judgment was entered the rule

applied. (citations omitted)(emphasis in original)

*Id.*

Appellees basically assert that because the Williams/State Farm lawsuit sued for Ryan's wrongful death, as does the instant one against them, one cause of action is involved and this Court's historical application of the one satisfaction rule should be applied to either discharge them from potential liability and/or bar the suit. In addition, reliance is placed on the doctrine espoused by this Court in *Farrar v. Wolfe*, 357 P.2d 1005 (Okla.1960), "which held there cannot be recovery in a malpractice suit by one who has sustained personal injuries in consequence of a third person's negligence, against a physician for negligent aggravation of such injuries by improper treatment, after settlement with full release of the tortfeasor who caused the injuries." *Shadden v. Valley View Hospital, supra,* 915 P.2d at 367.[8] As had been recognized as a central purpose of the one satisfaction rule, the rule laid down in *Farrar* had as its central purpose guarding against the possibility of the injured party obtaining double recovery. *Shadden v. Valley Hospital,* 915 P.2d at 368; *Birmingham v. Berryhill,* 557 P.2d 910, 911 (Okla.1976).[9] The rule in *Farrar* was further an outgrowth of the following principles:

[Generally,] an original tortfeasor, negligently causing injury to a third person, is liable for the negligence of a physician who treats the injured person where negligent treatment results in aggravation of or increasing the injuries, so long as the injured person exercises good faith in the choice of physicians. *Atherton v. Devine,* 602 P.2d 634, 636 (Okla.1979); *Smith v. Missouri, K. & T. Ry. Co.,* 76 Okla. 303, 185 P. 70, 73–74 (1918). This rule is founded on sound reasons of public policy and is mere-

---

**8.** The rule of *Farrar v. Wolfe,* 357 P.2d 1005 (Okla.1960), was consistent with and a special application of the general common law principle that the release of one tortfeasor liable to a plaintiff ordinarily releases other tortfeasors jointly liable. *Summey v. Lacy,* 42 Colo.App. 1, 588 P.2d 892, 893 (1978).

**9.** Although generally having the same effect, i.e. discharge of other potential tortfeasors, the one

satisfaction rule revisited in *Kirkpatrick v. Chrysler Corp.,* 920 P.2d 122 (Okla.1996), and the rule as to releases of *Farrar v. Wolfe, supra,* note 8, are not identical. One difference is that the one satisfaction rule dealt with in *Kirkpatrick* involves the actual entry of judgment in favor of an injured plaintiff and against one or more, but less than all, jointly liable defendants, and a satisfaction of the judgment, whereas a release may merely involve a non-sanctioned out-of-court agreement between a plaintiff and tortfeasor.

ly a particular application of the rule that a tortfeasor whose negligence causes injury is also liable for any subsequent injury or reinjury that is the proximate result of the original wrongdoing, except where the subsequent injury or reinjury is caused by either the negligence of the injured person, or the independent or intervening act of a third person. *Atherton, supra,* 602 P.2d at 636–637. In that injuries suffered as a result of the medical treatment were considered to have been proximately caused by the original tort, in this sense, the physician and original wrongdoer caused a "single" injury, and were, therefore, jointly liable to the victim. *Summey v. Lacy,* 42 Colo.App. 1, 588 P.2d 892, 893 (1978). This is so even though the physician can be said to be a successive tortfeasor, rather than a joint or concurrent one. *Radford–Shelton, Etc. v. St. Francis Hospital, Inc.,* 569 P.2d 506, 509–510 (Okla.Ct.App., Div.1, 1976); *See also Fieser v. St. Francis Hospital and School Of Nursing, Inc.,* 212 Kan. 35, 510 P.2d 145 (1973)(recognizing that doctors and hospitals treating tort victim for injuries caused by original wrongdoer are successive tortfeasors).

*Shadden v. Valley View Hospital,* 915 P.2d at 367–368.

In our view, although the arguments of appellees may have had some validity prior to our recent decisions in *Kirkpatrick, Shadden* and *Carmichael v. Beller, supra,* they do not now.

In *Shadden* and *Carmichael* we recognized the rule laid down in *Farrar v. Wolfe* as to the effect of a release of one of two or more tortfeasors potentially liable for the same injury or death had been overruled by the Oklahoma Legislature by an amendment to the Uniform Contribution Among Tortfeasors Act (UCATA), 12 O.S.1991, § 832. The amendment occurred in 1980 and added subsection (H)(1) and (2) to § 832. Subsection (H)(1) concerns when a release or similar document will discharge from liability tort-

feasors who are not parties to the release and it provides:

    H. When a release, covenant not to sue or a similar agreement is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:

    1. It does not discharge any of the other tort-feasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater[.] [10]

■ In that applicability of § 832(H)(1) turns on whether a common liability to the plaintiff exists among the tortfeasors, i.e. "two or more persons [are] liable in tort for the same injury or the same wrongful death", we recognized in both *Shadden* and *Carmichael* that to the extent an original tortfeasor would be considered liable along with a subsequent treating physician for injuries caused by the negligence of the physician, the UCATA would be applicable in answering the question of when a physician (or other health care provider) (i.e. non-settling tortfeasor) would be discharged by a release given to an original tortfeasor (i.e. settling tortfeasor). *Shadden, supra,* 915 P.2d at 369; *Carmichael, supra,* 914 P.2d at 1056.

■ In that we had earlier, in *Moss v. City of Oklahoma City,* 897 P.2d 280 (Okla. 1995), construed § 832(H)(1) to discharge non-settling tortfeasors potentially liable for the same injury or wrongful death only if these others were named or otherwise specifically identified in the release [*Moss v. City of Oklahoma City,* 897 P.2d at 282 and 286], both *Shadden* and *Carmichael* held that to the extent an original tortfeasor is liable along with the health care provider for the same injuries—i.e. there is a common liability for injuries suffered during medical treatment necessitated by original tortfeasor wrongdoing—a release given to the original

---

10. Section 832(H)(1) was amended in 1995 in pertinent part to read, "[i]t does not discharge any other tort-feasor from liability for the injury or wrongful death unless the other tort-feasor is specifically named...." See 12 O.S. Supp.1995, § 832(H)(1). As can be seen, the phrase following the word unless was changed from "its terms so provide" to "the other tort-feasor is specifically named".

tortfeasor will not discharge the health care provider unless the latter is named or otherwise specifically identified therein as a party to be discharged. *Shadden,* 915 P.2d at 368–370; *Carmichael,* 914 P.2d at 1055–1057. *Farrar v. Wolfe,* a decision predating the passage of § 832(H)(1), therefore, no longer controls whether the release of an original tortfeasor will also discharge a treating physician.

Of course, the Legislature dealt with the possibility of double recovery by mandating that the amount paid for the release or an amount stipulated therein, whichever is greater, will reduce any further claim against non-settling tortfeasors. § 832(H)(1); *Shadden,* 915 P.2d at 369. Thus, double recovery no longer provides a viable rationale for the *Farrar* rule "because to the extent the original tortfeasor is liable for the malpractice of the physician or negligence of another health care provider, a common liability exists and assuming the settlement proceeds (or some portion thereof) represent payment for such common liability, § 832(H)(1) would mandate some deduction from any recovery against the health care provider....[ ]" *Shadden,* 915 P.2d at 369. (footnote omitted)

Although the one satisfaction rule was not directly controlled by § 832(H)(1) of the UCATA because we had held in *Brigance v. Velvet Dove Restaurant, supra,* the Legislature did not intend the reach of that provision to extend to judgments and satisfactions thereof [756 P.2d at 1235], following our decisions in *Moss, Carmichael* and *Shadden, Kirkpatrick* went on to reexamine this Court's treatment under the common law of the one satisfaction rule. *Kirkpatrick* rejected our previous mechanistic application of the one satisfaction rule with the following language:

> When the issue of the amount of damages has been the subject of actual adjudication on the merits by either judge or jury, or the parties actually agree via a consent or agreed judgment that the amount settled for should actually represent full compensation for a plaintiff's injuries, and the plaintiff is paid such amount, it makes perfect sense and comports with simple justice to preclude a plaintiff from pro-

ceeding against other tortfeasors. In the former situation, the issue of the amount of damages has actually been determined on the merits through the judicial process and, in the latter it can be conclusively presumed full compensation is reflected by the agreed settlement amount. In such cases, a plaintiff should not be allowed to proceed against others because it can be confidently said that full compensation has already once been recovered for injuries suffered. Allowing additional opportunities to recover from other potential tortfeasors after a plaintiff has already had one full opportunity to prove the full amount of his damages, an amount which has then been paid, or where the plaintiff has agreed he has been paid full compensation, would also breed inefficiency and thwart the beneficial goal of bringing finality to litigation. However, when the agreed or consent judgment is merely part of a settlement of the case never intended to discharge absent tortfeasors and never intended to represent full compensation we believe a different result should obtain. Accordingly, we can no longer adhere to the mechanistic approach we have appeared to follow [in our application of the one satisfaction rule]....

*Kirkpatrick, supra,* 920 P.2d at 129–130.

■ In place of the mechanical application of the rule, we opted in *Kirkpatrick* to follow a view we deemed better reasoned—a view that generally comported with the view espoused by the RESTATEMENT (SECOND) OF TORTS § 886 (1979) and the RESTATEMENT (SECOND) OF JUDGMENTS § 50 (1982). This view adopted in *Kirkpatrick* can generally be stated as follows:

> [I]n the absence of actual adjudication on the merits of the issue of the amount of damages, satisfaction of an agreed or consent judgment will generally be treated like a release, covenant not to sue or similar agreement.

Recently, we interpreted 12 O.S.1991, § 832(H)(1), a part of the Uniform Contribution Among Tortfeasors Act (UCATA), in regard to when a release given to one tortfeasor will be considered to act as a

discharge of other potential tortfeasors liable to an injured party for the same injury or wrongful death. We held in *Moss v. City of Oklahoma City*, 897 P.2d 280 (Okla. 1995), that such a release will discharge other potential tortfeasors only if they are named or otherwise specifically identified in the release as persons to be discharged. We believe the same general rule should be applied where satisfaction of an agreed or consent judgment is involved, i.e where there is no actual adjudication on the merits of the issue of the amount of damages.... [H]owever, we realize the parties to the settlement may intend that the amount of the settlement embodied in a consent or agreed judgment is to represent full compensation for a plaintiff's injuries. In such a situation, we see no reason why a plaintiff should not be precluded from further litigation against other potential tortfeasors. (footnotes omitted)

*Kirkpatrick, supra,* 920 P.2d at 132.

■ In our view, *Kirkpatrick* is fully applicable to this wrongful death case to the extent there is a common liability among the

alleged original tortfeasor, Williams and appellees for Ryan's death. .The fact this is a wrongful death case does not alter our view. In fact, the main case expressly overruled in *Kirkpatrick* to the extent its outmoded mechanistic application of the one satisfaction rule was inconsistent with the views expressed in *Kirkpatrick* was *Cain v. Quannah Light & Ice Co.*, 131 Okla. 25, 267 P. 641 (1928), which involved a wrongful death, as did some of its progeny discussed in *Kirkpatrick*.[11]

Therefore, in that no conclusive evidence exists in this record there was an actual adjudication on the merits of the issue of the amount of damages resulting from Ryan's death by judge or jury, that any appellee was named or otherwise specifically identified as a person or entity to be discharged in any pertinent document, or that the $20,000.00 apparently paid by Williams and State Farm was intended to represent full compensation for the death, it was error for the trial court to have granted summary judgment to appellees and for the Court of Appeals to affirm the granting of summary judgment.[12]

**11.** *See e.g. Sykes v. Wright*, 201 Okla. 346, 205 P.2d 1156 (1949). Further, any apparent reliance appellees, Miller, M.D., Inc. and Drs. Miller and Dimski, attempt to place on cases such as *Abel v. Tisdale*, 619 P.2d 608 (Okla.1980), *Shawnee Gas & Electric Co. v. Motesenbocker*, 41 Okla. 454, 138 P. 790 (1913), and *Weavel v. U.S. Fidelity & Guar. Co.*, 852 P.2d 783 (Okla.Ct.App., Div.3, 1992), to support an argument the wrongful death statutes [12 O.S.1991, § 1053–1055] somehow prohibit this suit against them because these statutes contemplate only one cause of action is misplaced. *Weavel* clearly evidences the difference between those cases and this one. In such regard, *Weavel* concerned answering the question of whether both a mother and a father, who were each damaged by the death of a minor child (i.e. they each held a beneficial interest in a wrongful death action), could bring separate wrongful death actions against the same defendants for the death of their daughter. The situation in *Weavel* was that the mother, having been appointed personal representative of the deceased daughter's estate, brought an action against two tortfeasors allegedly responsible for the death and an insurance company. 852 P.2d at 784. The father subsequently sued the same defendants, contending each parent had a separate and independent action for the death of the child, even though the mother had been appointed personal representative of the deceased daughter's estate. *Id.* In construing §§ 1053, 1054 and 1055, the Court of Appeals relied in

part on this Court's early decision in *Motesenbocker* to determine the father's suit was properly dismissed by the trial court because the statutory scheme on wrongful death did not give to the various individuals designated by said statutory scheme [e.g. widow, children, or next of kin] who might have sustained damage by virtue of the death the right to bring separate actions for the death. *Weavel*, 852 P.2d at 785. In other words, *Weavel* concerned who could sue for wrongful death even though others might have a beneficial interest in any proceeds recovered in a wrongful death action. Neither *Weavel*, *Abel* or *Motesenbocker* concerned the one satisfaction rule, i.e. whether a suit by a proper party plaintiff—as specified under the statutory wrongful death scheme—against one or more tortfeasors was barred because the same proper party plaintiff had obtained a judgment against a different tortfeasor apparently based on a settlement not intended to discharge other non-settling tortfeasors or to represent full compensation for the wrongful death. None of the appellees argue here that appellant is not a proper party to bring an action for the wrongful death of Heather Elizabeth Ryan.

**12.** We finally note that we perceive no principle of public policy or fairness that would dictate denying appellant the benefit of our decision in *Kirkpatrick v. Chrysler Corp., supra*, note 9. Although appellant has focused primarily on ob-

Consistent with the views expressed above, the Court of Appeals' opinion is **VACATED** and the trial court judgments granting summary judgment to appellees are **REVERSED** and the matter is **REMANDED**.

ALMA WILSON, C.J., KAUGER, V.C.J., and HODGES, LAVENDER, SIMMS, HARGRAVE, SUMMERS and WATT, JJ., concur.

OPALA, J., concur in deference to stare decisis.

taining the overruling of *Farrar v. Wolfe, supra,* note 8, which we determined in *Carmichael v. Beller,* 914 P.2d 1051, 1055–1056 (Okla.1996) and *Shadden v. Valley View Hospital,* 915 P.2d 364, 368–369 (Okla.1996), was overruled by the legislative enactment in 1980 of § 832(H) of the UCATA, and *Farrar* is not a case that expressly involved a judgment and satisfaction thereof (as here), the one satisfaction rule cases overruled in *Kirkpatrick* have been an intimate part of this proceeding through the arguments of appellees and, appellant's arguments have always been consistent with the view the prior case against Williams and State Farm should not bar the instant suit against appellees because the prior Williams/State Farm suit was merely a friendly suit. In essence, part of appellant's argument has been the amount recovered in the Williams/State Farm suit was via settlement and compromise, that such amount was never intended to act as full compensation for Ryan's death and the releases and satisfactions of judgment filed there were never intended to act as a discharge of appellees.